**Sanjay S. Schmidt (SBN 247475)**
**LAW OFFICE OF SANJAY S. SCHMIDT**
1388 Sutter Street, Suite 810
San Francisco, CA 94109
T: (415) 563-8583
F: (415) 223-9717
e-mail: ss@sanjayschmidtlaw.com

*Attorneys for Plaintiffs*

## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

## SACRAMENTO DIVISION

| | |
|---|---|
| CHUE DOA YANG, individually, and MAI THAO YANG, individually, | Case No.: |
| Plaintiffs, | **COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL** |
| vs. | 1. 42 U.S.C. § 1983 – Civil Rights Violations |
| COUNTY OF YUBA, a public entity; Correctional Sergeant SARBJIT SINGH KANDOLA, individually; Correctional Sergeant JEFFREY T. PALMER, individually; WELLPATH, LLC; CHRISTINA BOETS, M.F.T., individually; TAYLOR FITHIAN, M.D., individually; Nominal Defendant L.Y.., a minor, by and through his to-be-determined guardian ad litem, individually and as co-successor in interest to Decedent TONG YANG; Nominal Defendant NATALIE YANG, individually and as co-successor in interest to Decedent TONG YANG; Nominal Defendant NINA YANG, individually and as co-successor in interest to Decedent TONG YANG; Nominal Defendant KACIE YANG, individually and as co-successor in interest to Decedent TONG YANG; Nominal Defendant MIKE YANG, individually and as co-successor in interest to Decedent TONG YANG; Nominal Defendant DYLAN YANG, individually and as co-successor in interest to Decedent TONG YANG; Nominal Defendant DARREN YANG, individually and as co-successor in interest to Decedent TONG YANG;  and, DOES 1–50, jointly and severally, | 2. 42 U.S.C. § 1983 – *Monell* and Supervisory Liability<br>3. California Civil Code § 52.1 (b) – State Civil Rights Violations<br>4. Negligence |
| Defendants. | |

Complaint for Damages and Demand for Jury Trial
*Yang, et al. v. County of Yuba, et al.*
Case No.                                                    1

Plaintiffs, by and through their attorney, the LAW OFFICE OF SANJAY S. SCHMIDT, for their Complaint against Defendants, state as follows:

## JURISDICTION

1. This is a civil rights, wrongful death, and survival action arising from the suicide death of TONG YANG, on or about December 1, 2021, in the City of Marysville, County of Yuba, California.

2. Jurisdiction is founded upon 28 U.S.C. §§ 1331 and 1343(a)(3) and (4) because this action is being brought to obtain compensatory and punitive damages for the deprivation, under color of state law, of the rights of citizens of the United States that are secured by the United States Constitution, pursuant to 42 U.S.C. §§ 1983 and 1988. This action is brought pursuant to the First and Fourteenth Amendments to the United States Constitution, as well as the laws and Constitution of the State of California.

3. Plaintiffs and Nominal Defendants further invoke the supplemental jurisdiction of this Court, pursuant to 28 U.S.C. § 1367(a), to hear and decide claims arising under state law.

## INTRADISTRICT ASSIGNMENT TO SACRAMENTO DIVISION

4. A substantial part of the events and/or omissions complained of herein occurred in the City of Marysville, County of Yuba, California, and, pursuant to Eastern District Civil Local Rule 120(d), this action is properly assigned to the Sacramento Division of the United States District Court for the Eastern District of California.

## PARTIES AND PROCEDURE

5. Plaintiff MAI THAO YANG is the mother of Decedent TONG YANG, and she is a resident of the State of California. Plaintiff MAI THAO YANG brings these claims individually for violations of her personal rights.

6. Plaintiff CHUE DOA YANG is the father of Decedent TONG YANG, and he is a resident of the State of California. Plaintiff MAI THAO YANG brings these claims individually for violations of his personal rights.

Complaint for Damages and Demand for Jury Trial
*Yang, et al. v. County of Yuba, et al.*
Case No.                                    2

7.  The individuals named herein as Nominal Defendants are named as such, pursuant to California Code of Civil Procedure Section 382. The claims asserted are no different than the claims that would be asserted if these individuals were named herein as Plaintiffs. In reality, these Nominal Defendants are Plaintiffs, and this Complaint may be amended at a later date to change the party status of some or all of the "Nominal Defendants" to Plaintiffs. Consent of the individuals named as Nominal Defendants (all wrongful death claimants and co-successors in interest under California law) to be joined as Plaintiffs could not be obtained as of this time; consequently, these wrongful death claimants and co-successors in interest are being named at this time as Nominal Defendants.

8.  Minor Nominal Defendant L.Y. is and was at all times herein mentioned the son of Decedent TONG YANG, and a resident of the State of California. He will be represented in this matter by his to-be-determined guardian ad litem, pursuant to Federal Rule of Civil Procedure 17(c). Minor Nominal Defendant L.Y. brings these claims individually for wrongful death and violation of his personal rights, and as a co-successor in interest for his father, Decedent TONG YANG, pursuant to California Code of Civil Procedure § 377.11 and federal civil rights laws, asserting survival claims for TONG YANG, under both state and federal law.

9.  Nominal Defendant NATALIE YANG is the adult daughter of Decedent TONG YANG, and she is a resident of the State of California. Nominal Defendant NATALIE YANG brings these claims individually for wrongful death and violation of her personal rights, and as a co-successor in interest for her father, Decedent TONG YANG, pursuant to California Code of Civil Procedure § 377.11 and federal civil rights laws, asserting survival claims for TONG YANG, under both state and federal law.

10. Nominal Defendant NINA YANG is the adult biological daughter of Decedent TONG YANG, and she is a resident of the State of California. Nominal Defendant NINA YANG brings these claims individually for wrongful death and violation of her personal rights, and as a co-successor in interest for her father, Decedent TONG YANG, pursuant to California Code of Civil

Complaint for Damages and Demand for Jury Trial
*Yang, et al. v. County of Yuba, et al.*
Case No.                                    3

Procedure § 377.11 and federal civil rights laws, asserting survival claims for TONG YANG, under both state and federal law.

11.  Nominal Defendant KACIE YANG is the adult biological daughter of Decedent TONG YANG, and he is a resident of the State of California. Nominal Defendant KACIE YANG brings these claims individually for wrongful death and violation of her personal rights, and as a co-successor in interest for her father, Decedent TONG YANG, pursuant to California Code of Civil Procedure § 377.11 and federal civil rights laws, asserting survival claims for TONG YANG, under both state and federal law.

12.  Nominal Defendant MIKE YANG is the adult biological son of Decedent TONG YANG, and he is a resident of the State of California. Nominal Defendant MIKE YANG brings these claims individually for wrongful death and violation of his personal rights, and as a co-successor in interest for his father, Decedent TONG YANG, pursuant to California Code of Civil Procedure § 377.11 and federal civil rights laws, asserting survival claims for TONG YANG, under both state and federal law.

13.  Nominal Defendant DYLAN YANG is the adult biological son of Decedent TONG YANG, and he is a resident of the State of California. Nominal Defendant DYLAN YANG brings these claims individually for wrongful death and violation of his personal rights, and as a co-successor in interest for his father, Decedent TONG YANG, pursuant to California Code of Civil Procedure § 377.11 and federal civil rights laws, asserting survival claims for TONG YANG, under both state and federal law.

14.  Nominal Defendant DARREN YANG is the adult biological son of Decedent TONG YANG, and he is a resident of the State of California. Nominal Defendant DARREN YANG brings these claims individually for wrongful death and violation of his personal rights, and as a co-successor in interest for his father, Decedent TONG YANG, pursuant to California Code of Civil Procedure § 377.11 and federal civil rights laws, asserting survival claims for TONG YANG, under both state and federal law.

Complaint for Damages and Demand for Jury Trial
*Yang, et al. v. County of Yuba, et al.*
Case No.                                    4

15. The claims in this Complaint are brought pursuant to California Code of Civil Procedure §§ 377.20 *et seq.* and 377.60 *et seq.*, which provide for survival and wrongful-death actions. As set forth more specifically above, the claims are brought both individually and on behalf of TONG YANG, on the basis of 42 U.S.C. §§ 1983 and 1988, the United States Constitution, federal and state civil-rights law, and California law. These claims are also brought by Plaintiffs and the Nominal Defendants as Private Attorneys General, to vindicate not only their rights, but others' civil rights of great importance.

16. Defendant COUNTY OF YUBA ("COUNTY") is a public entity, established by the laws and Constitution of the State of California, which owns, operates, manages, directs, and controls the Yuba County Sheriff's Department ("YCSD"), and is the employer of the individual COUNTY Defendants, as well as certain DOE Defendants. Under its authority, the COUNTY operates the YCSD.

17. Defendant COUNTY, under its authority, operates the Yuba County Jail and is, and was, responsible for ensuring the provision of emergency, medical, and mental-health services to all Yuba County Jail detainees. Defendant COUNTY was and is responsible for ensuring that the basic human needs of individuals in its custody are met, and for ensuring that inmates are not at risk of serious harm, including by providing appropriate funding, oversight, and corrective action to ensure adequate conditions. Defendant COUNTY is also responsible for ensuring that jail policies and practices do not violate inmates' constitutional rights or put them at risk of serious harm, including by suicide, because they are a danger to themselves or otherwise unable to properly care for themselves. Defendant COUNTY, by law, possesses the ultimate authority over the responsibility for the medical care, mental-health care, treatment, and physical safekeeping of all incarcerated persons at the Yuba County Jail, including Decedent TONG YANG. Pursuant to California Government Code § 815.2, the COUNTY is vicariously liable for the state-law torts of its employees and agents, including the individual defendants herein that are both named and those to-be-identified individuals that will be named later.

Complaint for Damages and Demand for Jury Trial
*Yang, et al. v. County of Yuba, et al.*
Case No.                                    5

18. Defendant Correctional Sergeant SARBIJT SINGH KANDOLA ("KANDOLA") at all material times was employed as a law-enforcement officer by Defendant COUNTY's YCSD and was acting in the course and scope of that employment at all material times.

19. Defendant Correctional Sergeant JEFFREY T. PALMER ("PALMER") at all material times was employed as a law-enforcement officer by Defendant COUNTY's YCF and was acting in the course and scope of that employment at all material times.

20. Defendant WELLPATH, LLC ("WELLPATH"), is a Delaware corporation headquartered in Nashville, Tennessee. Defendant WELLPATH, one of the nation's largest for-profit correctional health-care providers, services about 394 county jails and community facilities, and more than 140 state and federal prisons in about 36 states.[1]

21. Defendant WELLPATH and their employee and medical directors for WELLPATH's services at the Yuba County Jail were at all material times responsible for making and enforcing policies, procedures, supervision, and training related to the mental-health care of inmates at Defendant COUNTY's Yuba County Jail, including, but not limited to: properly assessing the mental-health needs, and providing appropriate observation and suicide prevention.

22. Defendant CHRISTINA BOETS, M.F.T. ("BOETS") was at all material times employed by Defendant WELLPATH, and acted at all material times within the course and scope of that employment. Defendant BOETS failed to provide competent mental-health care to Decedent YANG, with deliberate indifference to his serious risk of self-harm.

23. Defendant TAYLOR FITHIAN, M.D. ("FITHIAN"), was at all material times employed by Defendant WELLPATH, and acted at all material times within the course and scope of that

---

[1] WELLPATH was created in 2018 from HIG Capital's merging CFMG with another correctional-healthcare company, Correct Care Solutions. From 2016 until 2018, COUNTY contracted with CFMG, owned by HIG Capital as part of its portfolio of correctional-medical group companies. In 2015, the *Sacramento Bee* reported that, over a 10-year period, jails contracting with CFMG had a rate of suicide and drug overdoses 50 percent higher than in non-CFMG serviced county jails in California. *See* https://www.sacbee.com/news/investigations/the-public-eye/article7249637.html.

Complaint for Damages and Demand for Jury Trial
*Yang, et al. v. County of Yuba, et al.*
Case No.                    6

employment. Defendant FITHIAN failed to provide competent mental-health care to Decedent YANG, with deliberate indifference to his serious risk of self-harm.

24. The true names and capacities of Defendants sued herein as DOES 1–50 ("DOE Defendants") are unknown to Plaintiffs[2] and Nominal Defendants, who, therefore, sue said Defendants by such fictitious names. Plaintiffs will seek leave to amend this Complaint to show their true names and capacities when the same are ascertained.

25. DOE Defendants 1–20 were and/or are to-be-identified employees/agents of the COUNTY and/or the YCSD, and at all material times acted within the course and scope of that employment.

26. DOE Defendants 21–40 were and/or are and/or may be to-be-identified employees and/or agents of Defendant WELLPATH, and at all material times acted within the course and scope of that employment.

27. DOE Defendants 41–50 were and/or are and/or may be to-be-identified employees and/or agents of any other to-be-identified municipality or business entity, and at all material times acted within the course and scope of that employment.

28. Plaintiffs are informed and believe, and thereon allege, that each of the Defendants sued herein was negligently, wrongfully, and otherwise responsible in some manner for the events and happenings as hereinafter described, and proximately caused injuries and damages to Decedent, Plaintiffs, and the Nominal Defendants.

29. Further, one or more DOE Defendants was at all material times responsible for the hiring, training, supervision, and discipline of other defendants, including DOE Defendants.

---

[2] Due to the status of the Nominal Defendants in this Complaint as de-facto "Plaintiffs," the label "Plaintiffs" and "Nominal Defendants" will be interchangeable in this Complaint, in the interest of brevity and in order to obviate the need to list both in all applicable places in the Complaint. Every provision in which Plaintiffs are referenced shall also mean Nominal Defendants, unless otherwise stated, or if is not implied based on the context. The inclusion of both Plaintiffs and Nominal Defendants in some portions, but not others, shall not be construed to imply that, where Nominal Defendants are not explicitly referenced, they are omitted.

Complaint for Damages and Demand for Jury Trial
*Yang, et al. v. County of Yuba, et al.*
Case No.                                      7

30.  Plaintiffs are informed and believe, and thereon allege, that each of the Defendants was at all material times an agent, servant, employee, partner, joint venturer, co-conspirator, and/or alter ego of the remaining Defendants, and in doing the things herein alleged, was acting within the course and scope of that relationship.

31. Plaintiffs are further informed and believe, and thereon allege, that each of the Defendants herein gave consent, aid, and assistance to each of the remaining Defendants, and ratified and/or authorized the acts or omissions of each Defendant as alleged herein, except as may be hereinafter otherwise, specifically alleged.

32. At all material times, each Defendant was jointly engaged in tortious activity, and was an integral participant in the events and violations of rights described herein, resulting in the deprivation of Decedent's, Plaintiffs', and Nominal Defendants' constitutional rights and other harm.

33.  The acts and omissions of all Defendants as set forth herein were at all material times pursuant to the actual customs, policies, practices, and procedures of the COUNTY, the YCSD, and WELLPATH.

34. At all material times, each Defendant acted under color of the laws, statutes, ordinances, and regulations of the State of California.

35. Plaintiffs timely and properly filed a government code claim, pursuant to California Government Code § 910 *et seq*., and this action is timely filed within all applicable statutes of limitation.

36. This Complaint may be pleaded in the alternative, pursuant to Rule 8(d)(2) of the Federal Rules of Civil Procedure.

## GENERAL ALLEGATIONS

37. Plaintiffs and Nominal Defendants reallege each and every paragraph in this Complaint, as though fully set forth here.

38.  In January of 2017, Betram Hiscock killed himself on his third suicide attempt since arriving at the Yuba County Jail 77 days earlier; his second suicide attempt involved an attempt

Complaint for Damages and Demand for Jury Trial
*Yang, et al. v. County of Yuba, et al.*
Case No.                                          8

to choke himself to death by swallowing his own feces and urine. Mr. Hiscock suffered from bipolar disorder type 1, which caused him to hallucinate and behave oddly, but which could be managed by the drug Abilify. On November 14, 2016, Mr. Hiscock suffered a mental-health episode, during which he placed his mother in a choke hold and walked her down a street; despite his mother's pleas that he be taken to a psychiatric hospital, he was booked into the Yuba County Jail on charges of kidnapping and false imprisonment. Mr. Hiscock received no psychiatric care or medication for over a month, even though he told jail staff during his booking that he had been diagnosed as bipolar and required Abilify to manage his symptoms. Denied his medication, his mental health began to deteriorate. The family of Mr. Hiscock later filed suit. *Estate of Bertram Hiscock v. County of Yuba*, No. 2:17-cv-02706-JAM-GGH (E.D. Cal.).

39. On January 30, 2019, in *Hedrick v. Grant*, No. 2:76-cv-00162-EFB (E.D. Cal.), United States Magistrate Judge Edmund F. Brennan granted final approval to an Amended Consent Decree designed to remedy ongoing constitutional and statutory violations in the Yuba County Jail, including inadequate mental-health care and referrals. The facts adduced in that action and documented in the filings on record are incorporated herein by reference.

40. On or about November 26, 2021, Decedent YANG was booked into the Yuba County Jail as a pretrial detainee on a felony charge. During the receiving screening at about 1:00 p.m., WELLPATH employee Hugo Garcia, R.N., noted that Decedent YANG was an "Urgent Referral" for mental-health care, and that an "MFT/LCSW Sick Call" for Decedent YANG would/should occur the next day.

41.  On November 27, 2021, Alexi Atkinson, LCSW, performed a mental-health assessment on Decedent YANG, purportedly using a Hmong interpreter. Alexi Atkinson noted the following: that Decedent YANG had a history of hallucinations; and, that he stated that "spirits get inside of me" and that a spirit "tells me to do things." Decedent YANG further stated that he was worried about spirits, and that his mother-in-law had put a curse on him. Alexi Atkinson observed that Decedent YANG was "tearful" and depressed. Alexi Atkinson noted that Decedent YANG would be referred to a psychiatrist (MHMD) to rule out a psychiatric disorder diagnosis.

Complaint for Damages and Demand for Jury Trial
*Yang, et al. v. County of Yuba, et al.*
Case No.                                    9

42. By November 28, 2021, at about 11:30 a.m., Defendant BOETS put Decedent YANG on a staggered 15-minute suicide watch. Decedent YANG was placed in a stepdown cell. At about 1:00 p.m., Defendant BOETS met with Decedent YANG following an officer reporting that Decedent YANG was crying hysterically and could not be understood. Defendant BOETS noted that Decedent YANG wished he were dead and had thoughts of killing himself. Defendant BOETS further noted that Decedent YANG had current suicidal ideations and current homicidal ideations. Defendant BOETS noted that Decedent YANG was "reporting current command hallucinations related to si/hi [suicidal ideation/homicidal ideation] that he has no control over." Defendant BOETS further noted that Decedent YANG was "hysterical in his cell and unable to be understood." Defendant BOETS further noted that Decedent YANG's appearance was disheveled; his speech was expressive; his mood was anxious; his affect was tearful and labile; and, his thought content was hallucinations, delusional, suicidal, and homicidal. Defendant BOETS noted the following risk factors for Decedent YANG: that he had "active major depression/mania/hallucinations/delusions;" and that he had heightened preoccupation with legal issues. Defendant BOETS also noted that his placement in segregation/isolation was a risk factor for Defendant YANG. The plan, according to Defendant BOETS, was to keep Decedent YANG on suicide watch and to follow up with him daily.

43. At about 6:19 p.m. on November 28, Defendant BOETS noted that Decedent YANG was "sitting on floor covered in safety blanket" and had current suicidal ideation. Defendant BOETS noted that Decedent YANG's speech was slowed; his mood was anxious; his affect was blunted; his insight was poor; and his thought content was suicidal. Defendant BOETS noted that Decedent YANG would "continue on STEPDOWN due to current si [suicidal ideation] and previous presentation." Defendant BOETS noted that Decedent YANG needed "MH [mental-health] Follow-up."

44. On November 29, 2021, at about 6:30 p.m., Defendant BOETS saw Decedent YANG; she noted that his appearance was "bizarre"; his speech was "loud" and "expressive"; his mood was "irritable" his affect was "labile" and "hostile"; his thought form was "circumstantial,"

Complaint for Damages and Demand for Jury Trial
*Yang, et al. v. County of Yuba, et al.*
Case No.                                        10

1   "tangential," and "comp/obsess," or compulsive-obsessive; and, his behavior was "agitated."

2   Defendant BOETS consulted with an RN on duty, with Defendant PALMER, and Defendant

3   FITHIAN, and the decision was made to continue to house Decedent YANG in a stepdown cell

4   on suicide watch.

5       45. On November 30, 2021, at about 7:00 a.m., Defendant BOETS noted that Decedent

6   YANG was currently on suicide watch. Decedent YANG stated that he missed his children and

7   wanted to see them again, and stated that he was having command hallucinations. Defendant

8   BOETS scheduled Decedent YANG for "psych today" because Decedent YANG had "reported

9   recent command hallucinations" that were telling him to hurt himself and others.

10      46. On information and belief, the Decedent was never properly and adequately evaluated by

11  a psychiatrist to assess the acuity of his suicidality and psychosis as it related to his severe

12  hallucinations. Defendants did not properly assess nature and degree of the Decedent's

13  psychosis.

14      47. Based on the totality of circumstances and the totality of risk factors present, at the time

15  he was discharged from suicide precautions, TONG YANG was still and remained at an elevated

16  risk of suicide, and reasonable precautions needed to be taken, in view of the significant risk that

17  TONG YANG still posed of committing suicide.

18      48. Nevertheless, Defendant BOETS consulted the registered nurse on duty, DOE

19  DEFENDANT 1, and Defendant KANDOLA, and with deliberate indifference to Decedent

20  YANG's serious medical needs, decided to discharge Decedent YANG from suicide watch. On

21  information and belief, Defendant BOETS and the other, to-be-identified Defendants failed to

22  take reasonable steps to protect the safety and wellbeing of YANG by formulating an

23  appropriate, individualized treatment plan, and discharged YANG from suicide watch without

24  formulating, having in place, and ensuring compliance with a safety plan. Defendant BOETS

25  noted that Decedent YANG should be referred for psychiatry. By 8:29 a.m., Decedent YANG

26  had been "cleared from checks by mental health."

27

Complaint for Damages and Demand for Jury Trial
*Yang, et al. v. County of Yuba, et al.*
Case No.                                11

49. On December 1, 2021, at 2:22 a.m., while conducting checks, Decedent YANG was found unresponsive in his cell, having hanged himself.

50. On information and belief, it had been over an hour since Decedent YANG had been checked on in his stepdown cell. On information and belief, Defendants KANDOLA and PALMER failed to ensure that Decedent YANG received welfare checks every hour, as required by Title 15.

51. At all material times, and alternatively, the actions and omissions of each Defendant were intentional, wanton, and/or willful, conscience-shocking, reckless, malicious, deliberately indifferent to Decedent's, Plaintiffs', and Nominal Defendants' rights, and done with actual malice, recklessness, gross negligence, deliberate indifference, negligence, and/or were otherwise objectively unreasonable.

52. As a direct and proximate result of each Defendant's acts and/or omissions, as set forth above, Plaintiffs and Nominal Defendants sustained the following injuries and damages, past and future, including, but not limited to:

      a.    Wrongful death of TONG YANG, pursuant to California Code of Civil Procedure § 377.60 *et seq*. (by all Nominal Defendants and to-be-named Plaintiffs, but not Plaintiffs MAI THAO YANG and CHUE DOA YANG);

      b.    Hospital and medical expenses, pursuant to California Code of Civil Procedure § 377.20 *et seq*. (Survival Claims by all Nominal Defendants and to-be-named Plaintiffs, but not Plaintiffs MAI THAO YANG and CHUE DOA YANG);

      c.    Coroner's fees, funeral, and burial expenses, pursuant to California Code of Civil Procedure § 377.20 *et seq*. (Survival Claims by all Nominal Defendants and to-be-named Plaintiffs, except for MAI THAO YANG and CHUE DOA YANG);

      d.    Loss of support and familial relationships, including loss of love, companionship, comfort, affection, society, services, solace, and moral support (wrongful death by all Nominal Defendants and to-be-named Plaintiffs, and deprivation of familial association by all Nominal Defendants, Plaintiffs, and to-be-named Plaintiffs);

Complaint for Damages and Demand for Jury Trial
*Yang, et al. v. County of Yuba, et al.*
Case No.        12

e.   TONG YANG's loss of life, including loss of enjoyment of his life, pursuant to federal civil rights law (Survival Claims by all Nominal Defendants and to-be-named Plaintiffs, but not Plaintiffs MAI THAO YANG and CHUE DOA YANG);

f.   TONG YANG's pre-death, conscious pain and suffering, pursuant to California law and federal civil rights law (Survival Claims by all Nominal Defendants and to-be-named Plaintiffs, but not Plaintiffs MAI THAO YANG and CHUE DOA YANG);

g.   All Plaintiffs' loss of their relationship with the Decedent, including pain and suffering and the attendant emotional distress, pursuant to federal civil rights law (all Plaintiffs, based on individual § 1983 claims for loss of familial association);

h.   All damages, penalties, costs, and attorneys' fees recoverable under 42 U.S.C. §§ 1983, 1988; California Civil Code §§ 52 and 52.1 *et seq.*; California Code of Civil Procedure § 1021.5; and as otherwise allowed under California and United States statutes, codes, and common law.

53. The conduct of Defendants KANDOLA, PALMER, BOETS, and DOES 1–50 was malicious, wanton, oppressive, and in reckless disregard of the rights and safety of Decedent, Nominal Defendants, to-be-identified Plaintiffs, Plaintiffs, and the public. Nominal Defendants, to-be-identified Plaintiffs, and Plaintiffs are, therefore, entitled to an award of punitive damages against Defendants KANDOLA, PALMER, BOETS, and DOES 1–50.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
### (42 U.S.C. § 1983)
### PLAINTIFFS AND NOMINAL DEFENDANTS AGAINST DEFENDANTS KANDOLA, PALMER, BOETS, FITHIAN, and DOES 1-50

54. Plaintiffs and Nominal Defendants re-allege and incorporate by reference each and every allegation contained in this complaint, as though fully set forth here.

55. By the actions and omissions described above, Defendants KANDOLA, PALMER, BOETS, FITHIAN, and DOES 1–50, acting under the color of state law in their individual capacities, deprived TONG YANG as a pretrial detainee of the rights, privileges, and immunities secured by the Fourteenth Amendment by subjecting him, or through their deliberate

Complaint for Damages and Demand for Jury Trial
*Yang, et al. v. County of Yuba, et al.*
Case No.                    13

indifference, allowing others to subject him, to delay and denial of access to medical or mental health care for a serious, but treatable, medical or mental health condition.

56. The listed Defendants knew that TONG YANG's medical condition was serious, but treatable, and knew or must have known that he required access and delivery to urgently needed medical/mental health care; Defendants further had a duty to provide TONG YANG reasonable security and safe, appropriate housing and monitoring to accommodate his mental health condition.

57. The listed Defendants ignored, delayed, or denied to TONG YANG urgently needed medical and psychiatric care and treatment. As a result of the Defendants' deliberate indifference to both TONG YANG's need for medical care and treatment and his mental condition, Plaintiffs and Nominal Defendants suffered damages and deprivation of constitutional rights, as described herein.

58. By the actions and omissions described above, the individually named Defendants violated 42 U.S.C. § 1983, depriving Plaintiffs, Nominal Defendants, and Decedent of the following well-settled constitutional rights that are protected by the First and Fourteenth Amendments to the U.S. Constitution:

    a. The right to be free from deliberate indifference to TONG YANG's serious medical needs while in custody and confined in jail as a pretrial detainee, as secured by the Fourteenth Amendment;

    b. The right to be free from wrongful government interference with familial relationships and Plaintiffs', Nominal Defendants', and Decedent's right to companionship, society, and support, as secured by the First and Fourteenth Amendments.

59. The listed Defendants' failure to intervene, prevent, or stop the constitutional violations by others, when Defendants were in a position to so intervene when such violations were occurring, also renders such Defendant(s) liable for these violations.

60. Defendants subjected Plaintiffs, Nominal Defendants, and Decedent to their wrongful conduct, depriving Plaintiffs, Nominal Defendants, and Decedent of the rights described herein, knowingly, maliciously, and with conscious and reckless disregard for whether the rights and

Complaint for Damages and Demand for Jury Trial
*Yang, et al. v. County of Yuba, et al.*
Case No.    14

1   safety of Plaintiffs (individually and on behalf of TONG YANG) and others would be violated
2   by their acts and/or omissions.

3   61. As a proximate result of the foregoing wrongful acts and/or omissions, Plaintiffs,
4   Nominal Defendants, and Decedent sustained injuries and damages, as set forth above, in ¶ 52.
5   Plaintiffs and Nominal Defendants are, therefore, entitled to general and compensatory damages
6   in an amount to be proven at trial.

7   62. In committing the acts alleged above, the individually named Defendants and DOE
8   Defendants acted maliciously and/or were guilty of a wanton and reckless disregard for the
9   rights, safety, and emotional well-being of Plaintiffs, Nominal Defendants, and Decedent, and by
10  reason thereof, Plaintiffs and Nominal Defendants are entitled to punitive damages and penalties
11  allowable under 42 U.S.C. § 1983, California Code of Civil Procedure §§ 377.20 et seq, and
12  other state and federal law against these individual Defendants; no punitive damages are sought
13  directly against the COUNTY.

14  63. Plaintiff is also entitled to reasonable costs and attorney's fees under 42 U.S.C. § 1988
15  and other applicable California codes and laws.

**SECOND CAUSE OF ACTION**
(42 U.S.C. § 1983 – *Monell* and Supervisory Liability)
<u>PLAINTIFFS AND NOMINAL DEFENDANTS AGAINST DEFENDANTS COUNTY OF
YUBA, KANDOLA, PALMER, WELLPATH, FITHIAN, and DOES 1–10</u>

19  64. Plaintiffs re-allege and incorporate by reference each and every allegation contained in
20  this complaint, as though fully set forth herein.

21  65. As supervisors, Defendants KANDOLA, PALMER, FITHIAN, and DOES 1–10 each
22  permitted and failed to prevent the unconstitutional acts of other Defendants and individuals
23  under their supervision and control, and failed to properly supervise such individuals, with
24  deliberate indifference to the rights and serious medical needs of TONG YANG. Each of these
25  supervising Defendants either directed her or his subordinates in conduct that violated
26  Decedent's rights, OR set in motion a series of acts and omissions by his or her subordinates that
27  the supervisor knew or reasonably should have known would deprive Decedent of rights, OR

Complaint for Damages and Demand for Jury Trial
*Yang, et al. v. County of Yuba, et al.*
Case No.                                    15

knew his or her subordinates were engaging in acts likely to deprive Decedent of rights and failed to act to prevent his or her subordinate from engaging in such conduct, OR disregarded the consequence of a known or obvious training deficiency that she or he must have known would cause subordinates to violate Decedent's rights, and in fact did cause the violation of Decedent's rights. (See, Ninth Circuit Model Civil Jury Instruction 9.4). Furthermore, each of these supervising Defendants is liable in their failures to intervene in their subordinates' apparent violations of Decedents' rights.

66. On information and belief, no adequate Suicide Risk Assessment tool ("SRA") was implemented in COUNTY's jail prior to the Decedent's suicide, which was needed by COUNTY and WELLPATH to both initiate suicide precautions in COUNTY's jail and discharge inmates from suicide precautions, but it either was never promulgated, never implemented, has not been enforced, is inadequate, or was not followed with respect to Decedent.

67. Prior to Decedent's incarceration, on information and belief, the COUNTY, WELLPATH, and their policymakers and administrators were aware of the need to have a policy permitting jail staff to discontinue suicide precautions only after conducting an appropriate assessment, for jail medical staff to perform an appropriate assessment before the scheduled release of an inmate on suicide precautions, for inmates discharged from suicide precautions to get an appropriate treatment plan and follow-up assessments by staff, and that COUNTY and WELLPATH staff needed to be trained on the Suicide Risk Assessment form and development of treatment plans, with the training to be developed for new and existing COUNTY and WELLPATH employees, along with regular refresher training. Additionally, the COUNTY, WELLPATH, and their respective policymakers and administrators were aware that this training needed to include avoiding negative attitudes, the impact of correctional environments on suicidal behavior, predisposing factors, high-risk time periods, warning signs, and a suicide prevention policy, inter alia.

68. On information and belief, despite this knowledge that the COUNTY and WELLPATH, including the named Defendants as well as their policymakers and administrators, had at least as

Complaint for Damages and Demand for Jury Trial
*Yang, et al. v. County of Yuba, et al.*
Case No.                    16

of prior to the Decedent's incarceration, and in fact had much earlier, they failed to implement and/or enforce and/or properly execute these drastically needed suicide prevention policies, which failure was a moving force and proximate cause of the deprivations of Plaintiffs', Nominal Defendants', and Decedent's clearly established and well-settled constitutional rights, in violation of 42 U.S.C. § 1983, as more fully set forth above in the First Cause of Action.

69. On January 30, 2019, in *Hedrick v. Grant*, No. 2:76-cv-00162-EFB (E.D. Cal.), United States Magistrate Judge Edmund F. Brennan granted final approval to an Amended Consent Decree designed to remedy ongoing constitutional and statutory violations in the Yuba County Jail, including inadequate mental-health care and referrals, and including constitutional deprivations that did or reasonably could lead to in-custody suicides, like the suicide that gave rise to the instant action. The facts adduced in the *Hedrick* action and documented in the filings on record are incorporated herein by reference. This action, as well as other incidents, put the COUNTY and WELLPATH on notice of the need to remediate the deficiencies set forth in this Complaint and in this *Monell* cause of action.

70. On December 2, 2022, in *Hedrick v. Grant*, Eastern District of California Case No. 2:76 CV 00162, a Monitoring Report was released on conditions at the Yuba County Jail. This Report concludes that the *Hedrick* Defendants still are not in compliance with multiple provisions of the Amended Consent Decree ("ACD") approved of by Federal Magistrate Judge Edmund F. Brennan in early 2019. The Report specifically notes, among other things, inadequate medical and mental health staffing at the Jail; overuse of administrative segregation and other restrictive housing, including as long-term housing for class members with severe mental illness; inadequate reviews of the need for restrictive housing placements in specific cases; inadequate and untimely medical and mental-health assessments and treatment for class members housed in safety and step-down cells; and inadequate sick-call triage practices.

71. An amended version of an earlier monitoring report, dated June 8, 2022, was also released on the Jail's compliance with the Amended Consent Decree during the fourth quarter of 2021 and the first quarter of 2022. The June 8 Amended Report found, among other things,

Complaint for Damages and Demand for Jury Trial
*Yang, et al. v. County of Yuba, et al.*
Case No.                                          17

severely inadequate medical and mental health staffing; a severe breakdown in the Jail's medical and mental health systems that led to a class member suicide; unreasonable delays in the completion of certain physical modifications required by the ACD to mitigate the risk of suicide in the Jail; and ongoing refusals to provide documentation relating to compliance with the ACD's sick-call requirements.

72. The *Hedrick* action, the above-referenced action, *Estate of Bertram Hiscock v. County of Yuba*, No. 2:17-cv-02706-JAM-GGH (E.D. Cal.), and other, similar such incidents, whether such incidents precipitated the filing of a Government Code Section 910 tort claim, any other type of complaint, or lawsuit, put the COUNTY and WELLPATH on adequate notice, thereby giving the COUNTY, WELLPATH, and their policymakers actual knowledge or reason to know that their policies and procedures were inadequate to prevent the violations complained of in this Complaint; additionally and alternatively, given the foregoing notice and other facts and circumstances, the COUNTY, WELLPATH, and their policymakers had actual knowledge, were deliberately indifferent to, or had reason to know of the known or obvious consequences of their failures, including what occurred in the instant case, which culminated in the Decedent's wrongful death.

73. Plaintiffs allege, upon information and belief, the unconstitutional actions and/or omissions of the individually named COUNTY and WELLPATH Defendants were pursuant to the following customs, policies, practices and/or procedures of the COUNTY and WELLPATH, stated in the alternative, which were directed, encouraged, allowed, and/or ratified by policy making officials for the COUNTY and its agencies, as well as WELLPATH:

     a.  To deny inmates at the COUNTY'S jail access to appropriate, competent, and necessary care for serious medical and psychiatric needs, including, but not limited to, by failing to require that all medical/psychiatric staff and supervisors at the jail be properly trained, supervised, credentialed, and licensed as required by law;

     b.  To fail to implement and/or enforce and/or properly execute drastically needed suicide prevention policies, which COUNTY and WELLPATH officials knew and/or had reason to know were needed;

Complaint for Damages and Demand for Jury Trial
*Yang, et al. v. County of Yuba, et al.*
Case No.                                    18

c. To fail to ensure that suicide precautions are not lifted without a proper assessment and without implementing reasonable prevention precautions, as well as formulating an executing a safety plan for the individual;

d. To fail to ensure an individualized treatment plan is formulated and followed before suicide prevention precautions are lifted;

e. To fail to ensure an individualized safety plan is formulated, documented, and followed prior to the lifting of suicide safety precautions;

f. To fail to properly classify, house, and/or monitor inmates suffering from mental health disabilities, including placement on suicide watch with proper suicide precautions, including failing to consider in any way the clear and obvious danger of placing inmates at risk of suicide in cells with means to hang and injure themselves (including bunk beds, horizontal bars, clothing, and ligature materials) and without the frequent, logged observation required by law;

g. To allow, encourage, and require unlicensed, inadequately trained, and inadequately supervised medical staff to make decisions to place jail inmates on, and remove inmates from, suicide watch in direct violation of applicable law and standards, including permitting unlicensed and/or untrained medical staff to remove severely mentally ill inmates from suicide watch without a reasonable, appropriate, and lawful basis for doing so;

h. To fail to institute proper procedures and training to coordinate inmate assessment, placement, suicide watch decisions, transfers psychiatric facilities, and care with the COUNTY and WELLPATH medical staff, jail physicians, jail psychiatrists, court, and/or jail corrections staff, where there was an obvious need for such to prevent the type of tragedy that occurred in this case;

i. To fail to institute, require, and enforce proper and adequate training, supervision, policies, and procedures for handling, housing, and caring for mentally ill and/or emotionally disturbed inmates at the COUNTY Jail, including alternatives to placing such ill and disturbed inmates in need of treatment in solitary confinement or segregation cells that are intended and used to punish inmates, with the obvious consequence that the mental health needs of such inmates remain unaddressed and are in fact aggravated and increased by such punitive treatment;

j. To fail to have and enforce necessary, appropriate, and lawful policies, procedures, and training programs to prevent or correct the unconstitutional conduct, customs, and procedures described in this Complaint and in subparagraphs (a) through (i) above, when the need for such was obvious, with deliberate indifference to the rights and safety of Plaintiffs, Decedent, and the public, and in the face of an obvious need for such policies, procedures, and training programs.

Complaint for Damages and Demand for Jury Trial
*Yang, et al. v. County of Yuba, et al.*
Case No.                    19

74. In the alternative, upon information and belief, Defendant COUNTY and/or WELLPATH may have instituted policies or training addressing some or all the topics listed above, but with deliberate indifference to citizens' rights, failed to properly oversee, enforce, and/or properly carry out such policies and/or training.

75. The above-described customs, policies, practices, and/or procedures of the COUNTY and WELLPATH were a moving force and/or a proximate cause of the deprivations of Plaintiffs' and Decedent's constitutional rights, in violation of 42 U.S.C. § 1983, as more fully set forth above the First Cause of Action.

76. Defendant COUNTY and WELLPATH are also liable for the violations of Plaintiffs' and Decedent's rights by their final policy makers, as described above. (*See*, Ninth Circuit Model Civil Jury Instruction 9.6).

77. On information and belief, the COUNTY and WELLPATH both conducted an investigation and review of this matter leading to the death of TONG YANG. The unconstitutional actions and/or omissions of the individually named Defendants, DOES 1–30, and other COUNTY and WELLPATH personnel, as described above, were approved, tolerated, and/or ratified by policy making officers for the COUNTY and WELLPATH. Plaintiffs are informed and believe, and thereupon allege, the details of this incident have been revealed to the authorized policy makers within the COUNTY, including the COUNTY agencies listed above, and that such policymakers have direct knowledge of the fact that TONG YANG was unlawfully denied necessary care for his serious medical needs due to their and their subordinates' misconduct and violations of Decedents' rights. Notwithstanding this knowledge, the authorized policymakers within the COUNTY and WELLPATH, including the various COUNTY agencies listed above, have approved of the individually named Defendants' and DOES 1–30s' conduct and decisions in this matter to the extent such individuals were under their supervision and oversight, and have made a deliberate, conscious, and affirmative choice to endorse and ratify such conduct and decisions, and the basis for them, which resulted in the death of TONG YANG. By so doing, the authorized policymakers within the COUNTY and WELLPATH have

Complaint for Damages and Demand for Jury Trial
*Yang, et al. v. County of Yuba, et al.*
Case No.                                              20

shown affirmative agreement with the conduct of individual Defendants and other employees/agents under their supervision, and have ratified the unconstitutional acts of these individual Defendants, employees, and agents.

78. The aforementioned customs, policies, practices, and procedures; the failure to properly and adequately hire, train, instruct, monitor, supervise, evaluate, investigate, and discipline; and, the unconstitutional orders, approvals, ratification, and toleration of wrongful conduct of individual Defendants were a moving force and/or a proximate cause of the deprivations of Plaintiffs', Nominal Defendants', and Decedent's clearly established and well-settled constitutional rights, in violation of 42 U.S.C. § 1983, as more fully set forth above in the First Cause of Action.

79. As a direct and proximate result of the foregoing unconstitutional actions, omissions, customs, polices, practices, and/or procedures of Defendants COUNTY OF YUBA, KANDOLA, PALMER,  WELLPATH, FITHIAN, and DOES 1–10, or the lack or inadequacy thereof, Plaintiffs and Nominal Defendants sustained serious and permanent injuries and damages, and are entitled to damages, penalties, costs, and attorneys' fees, as set forth above, in ¶ 52, and punitive damages against Defendants KANDOLA, PALMER, FITHIAN,  and DOES 1–10, in their individual capacities.

**THIRD CAUSE OF ACTION**
**(VIOLATION OF CALIFORNIA CIVIL CODE § 52.1 (b) – BANE ACT)**
**NOMINAL DEFENDANTS AGAINST DEFENDANTS COUNTY, KANDOLA,**
**PALMER, BOETS, FITHIAN, and DOES 11-50**

80. Nominal Defendants and to-be-identified Plaintiffs re-allege and incorporate by reference each and every paragraph contained in this complaint, as if fully set forth here.

81. By their acts, omissions, customs, and policies, each Defendant, acting in concert/conspiracy, as described above, interfered with, and/or attempted to interfere with, by acting with a reckless disregard for Nominal Defendants', to-be-identified Plaintiffs', and Decedent's rights, and violated Nominal Defendants', to-be-identified Plaintiffs', and Decedent's

Complaint for Damages and Demand for Jury Trial
*Yang, et al. v. County of Yuba, et al.*
Case No.                                    21

rights under California Civil Code § 52.1, by violating the following clearly established rights under the United States Constitution and the California Constitution:

a. Decedent's right to be free from an unreasonable ongoing seizure as a pretrial detainee, as secured by the Fourth and Fourteenth Amendments to the United States Constitution and the California Constitution, Article 1, Sections 7 and 13;

b. Decedent's right to be free from deliberate indifference to his serious medical needs while in custody as a pretrial detainee, as secured by the Fourteenth Amendment to the United States Constitution and the California Constitution, Article 1, Section 7;

c. Nominal Defendants', to-be-identified Plaintiffs', and Decedent's right to be free from wrongful government interference with familial relationships and Nominal Defendants' and to-be-identified Plaintiffs' right to companionship, society, and support of each other, as secured by the First and Fourteenth Amendments;

d. Nominal Defendants', to-be-identified Plaintiffs', and Decedent's right to enjoy and defend life and liberty; acquire, possess, and protect property; and pursue and obtain safety, happiness, and privacy, as secured by the California Constitution, Article 1, Section 1;

e. The right to protection from bodily restraint, harm, or personal insult, as secured by California Civil Code § 43; and,

f. Decedent's right to medical care, as required by California Government Code § 845.6.

82. Alternatively, or concurrently, the threat, intimidation, and coercion described herein was neither necessary nor inherent to Defendants' violation of Plaintiff's rights, nor to any legitimate law enforcement activity.

83. Further, all of Defendants' violations of duties and rights and coercive conduct, described herein, were volitional acts; none were accidental or merely negligent.

84. To the extent this claim is based on a violation of Decedent's rights, it is asserted as a survival claim. To the extent that the violations of rights were suffered by Nominal Defendants and to-be-identified Plaintiffs, it is asserted as a direct, wrongful death claim. To the extent the

Complaint for Damages and Demand for Jury Trial
*Yang, et al. v. County of Yuba, et al.*
Case No.                                                    22

violations were done to both Decedent and Plaintiff, it is asserted as both a survival and wrongful death claim.

85. The COUNTY is liable under California Government Code § 815.2 for injury proximately caused by an act or omission of an employee, committed within the course and scope of the employees' employment.

86. As a direct and proximate result of Defendants' violation of California Civil Code § 52.1 and of Plaintiffs' and Decedent's rights under the United States and California Constitutions and law, Plaintiffs sustained injuries and damages, and against each and every Defendant is entitled to relief as set forth above, in ¶ 52, and to punitive damages against the individual Defendants and DOES 11–50 in their individual capacities, including all damages allowed by California Civil Code §§ 52, 52.1, and California law, including costs, attorneys' fees, three times actual damages, and civil penalties.

**FOURTH CAUSE OF ACTION**
**(NEGLIGENCE)**
<u>**NOMINAL DEFENDANTS AGAINST DEFENDANTS COUNTY, KANDOLA,**</u>
<u>**PALMER, BOETS, FITHIAN, and DOES 11-50**</u>

87. Nominal Defendants and to-be-identified Plaintiffs re-allege and incorporate by reference the allegations contained in this complaint, as though fully set forth herein.

88. At all material times, Defendants COUNTY, KANDOLA, PALMER, BOETS, FITHIAN, and DOES 11-50 owed TONG YANG the duty to act with due care in the execution and enforcement of any right, law, or legal obligation.

89. At all material times, each Defendant owed TONG YANG the duty to act with reasonable care.

90. These general duties of reasonable care and due care owed to TONG YANG by all Defendants include, but were not limited, to the following specific obligations:

    a. To provide, or have provided, prompt and timely access to appropriate treatment and safety from the grave danger he posed to himself;

    b. To provide safe and appropriate jail custody for TONG YANG, including reasonable classification, monitoring, and housing, including placing him on suicide watch with proper suicide precautions, and preventing access to physical

Complaint for Damages and Demand for Jury Trial
*Yang, et al. v. County of Yuba, et al.*
Case No.                                        23

conditions and items that could foreseeably be used for suicide;

c. To summon necessary and appropriate medical care for TONG YANG;

d. To use generally accepted law enforcement and jail procedures that are reasonable and appropriate for Plaintiff's status as a mentally ill and/or emotionally disturbed person;

e. To use generally accepted custodial health care and suicide prevention procedures that are reasonable and appropriate for Plaintiff's status as a mentally ill and/or emotionally disturbed person;

f. To implement and/or enforce and/or properly execute drastically needed suicide prevention policies, which COUNTY officials knew and/or had reason to know were needed;

g. To properly classify, house, and/or monitor inmates suffering from mental health disabilities, including placement on suicide watch with proper suicide precautions, and to not remove an inmate from a 5150 hold without a proper suicide risk assessment, as well as considering the clear and obvious danger of placing inmates at risk of suicide in cells with means to hang and injure themselves (including bunk beds, horizontal bars, clothing, and ligature materials) and without the frequent, logged observation required by law;

h. To refrain from abusing their authority granted to them by law; and,

i. To refrain from violating Plaintiffs' rights guaranteed by the United States and California Constitutions, as set forth above, and as otherwise protected by law.

91. By the acts and omissions set forth more fully in the paragraphs above, Defendants acted negligently and breached their duty of due care, which foreseeably resulted in the suffering of damages by TONG YANG, Nominal Defendants, and the to-be-identified Plaintiffs.

92. Defendants, through their acts and omissions, breached the aforementioned duties owed to TONG YANG, Nominal Defendants, and the to-be-identified Plaintiffs.

93. Defendant COUNTY is vicariously liable pursuant to California Government Code section 815.2.

94. As a proximate result of Defendants' negligence, Nominal Defendants and the to-be-identified Plaintiffs sustained injuries and damages, and against each listed Defendant in this Cause of Action is entitled to the relief described above, in ¶ 52. Nominal Defendants and the to-

Complaint for Damages and Demand for Jury Trial
*Yang, et al. v. County of Yuba, et al.*
Case No.                                   24

be-identified Plaintiffs also seek punitive damages against such individual Defendants in their individual capacities. Nominal Defendants and the to-be-identified Plaintiffs do not seek punitive damages against the COUNTY.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, Nominal Defendants, and the to-be-identified Plaintiffs respectfully request the following relief against each and every Defendant herein, jointly and severally:

a. Compensatory damages in an amount according to proof and which is fair, just, and reasonable;

b. Punitive damages against the individual Defendants, under 42 U.S.C. § 1983 and California law, in an amount according to proof and which is fair, just, and reasonable (punitive damages are not sought against Defendant COUNTY);

c. Attorneys' fees and costs of suit under 42 U.S.C. § 1988;

d. Attorneys' fees and costs of suit under California Civil Code §§ 52 (b)(3) and 52.1(h);

e. All other damages, penalties, costs, interest, and attorneys' fees as allowed by 42 U.S.C. §§ 1983 and 1988, California Code of Civil Procedure § 1021.5, California Civil Code §§ 52 et seq. and 52.1, and as otherwise may be allowed by California and/or federal law;

f. Injunctive and declaratory relief, including, but not limited to, the following:

i. An order prohibiting Defendant COUNTY and its law-enforcement officers from engaging in the unconstitutional customs, policies, practices, training, and supervision as may be determined and/or adjudged by this case; and,

g. For such other and further relief, according to proof, as this Court may deem appropriate, just, or proper.

Dated: January 11, 2023

**LAW OFFICE OF SANJAY S. SCHMIDT**

*/s/ Sanjay S. Schmidt*
SANJAY S. SCHMIDT
Attorney for Plaintiffs

Complaint for Damages and Demand for Jury Trial
*Yang, et al. v. County of Yuba, et al.*
Case No.                    25

## **JURY TRIAL DEMAND**

Plaintiffs and Nominal Defendants hereby respectfully demand a jury trial, pursuant to Federal Rule of Civil Procedure 38, for all claims for which a jury is permitted.

Dated: January 11, 2023

**LAW OFFICE OF SANJAY S. SCHMIDT**

*/s/ Sanjay S. Schmidt*
SANJAY S. SCHMIDT
Attorney for Plaintiffs

Complaint for Damages and Demand for Jury Trial
*Yang, et al. v. County of Yuba, et al.*
Case No.                                    26