UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHUE DOA YANG, et al., <br><br> Plaintiffs, <br><br> v. <br><br> COUNTY OF YUBA, et. al., <br><br> Defendants. | No. 2:23-cv-00066-TLN-JDP <br><br><br> **ORDER** |

This matter is before the Court on Defendants County of Yuba (the "County"), Jeffrey T. Palmer, and Ismael Ramos's (collectively, "County Defendants") Motion to Dismiss.[1] (ECF No. 37.) Plaintiffs Chue Doa Yang and Mai Thao Yang (collectively, "Plaintiffs") filed an opposition. (ECF No. 39.) County Defendants filed a reply. (ECF No. 40.) For the reasons set forth below, the Court GRANTS County Defendants' motion.

///
///
///
///
///

---

[1] Defendants Wellpath, LLC, Christina Boets, and Taylor Fithian (collectively, "Wellpath Defendants") filed an answer to Plaintiffs' First Amended Complaint (*see* ECF No. 36), and thus are not party to the instant motion to dismiss.

1

## I. FACTUAL AND PROCEDURAL BACKGROUND

This case arises out of the suicide death of Tong Yang , a pretrial detainee housed at the Yuba County Jail ("Jail"). Plaintiffs are Yang's mother and father,[2] and County Defendants are the County of Yuba, as well Ramos and Palmer who were the officers on duty the night of Yang's death. (ECF No. 31 at 3–6.)

On November 26, 2021, Yang was booked into the Jail on an attempted murder charge. (*Id*. at 10.) Upon arrival, the Jail's initial screening revealed Yang was an "Urgent Referral" for psychiatric care. (*Id*.) The next day, a Wellpath social worker performed a mental health assessment on Yang and noted Yang was experiencing visual and auditory hallucinations, depression, and was worried about "spirits." (*Id*.) Yang specifically stated his mother-in-law put a curse on him, "'spirits' were 'inhabiting' his body[,]" and the "spirits had told him to kill himself in the past …." (*Id*.) Based on these assessment results, the social worker referred Yang to a Wellpath psychiatrist. (*Id*.)

Two days later, Yang began screaming hysterically in his cell that he was going to kill himself. (*Id*.) Defendant Christina Boets ("Boets"), a Wellpath therapist, responded and placed Yang on suicide watch, meaning Yang was transferred to a stepdown cell with a safety gown and blanket and received staggered 15-minute safety checks. (*Id*.) For the next two days, Yang remained on suicide watch and had documented suicidal and homicidal ideations, an irritable mood, agitated behavior, and active hallucinations. (*Id*. at 11–12.) On November 29, 2021, after a 12-hour assessment, Boets met with an RN on duty, Defendant Taylor Fithian, M.D. ("Fithian"), and Palmer, where it was decided Yang would remain in a stepdown cell on suicide watch. (*Id*. at 12.)

The next day, Boets conducted another 12-hour assessment on Yang and noted Yang had command hallucinations that told him to hurt himself. (*Id*. at 13.) Despite this, Boets took Yang off suicide watch without any plan for follow-up treatment. (*Id*.) Yang was then transferred to

---

[2]  Plaintiffs also name Yang's seven children as "nominal defendants" pursuant to California Code of Civil Procedure § 382. (*See* ECF No. 31 at 3–5.)

general population and housed in a single cell in F-Pod, which was in the Jail's Level 3 Housing Unit. (*Id*.)

That night, Ramos was the Level 3 officer on duty and was responsible for conducting safety checks for the sixty cells located on Level 3. (*Id.*) Ramos's supervisor and sergeant, Palmer, was also on duty. (*Id.* at 14.) Title 15, § 1027.5 of the California Code of Regulations ("Title 15") requires officers to conduct hourly visual checks of inmates' cells to ensure their safety and welfare. (*Id.*) That night, Ramos conducted Title 15 safety checks of Yang's cell at 9:47 PM, 10:41 PM, and 11:39 PM by allegedly glancing into Yang's cell. (*Id*.) An hour after Ramos's last safety check, Palmer conducted a supervisor check of Yang's housing pod. (*Id*. at 15.) When Palmer passed Yang's cell, Plaintiffs allege Palmer noticed Yang's feet were visible from behind the metal partition where the toilet was. (*Id.*) Palmer ordered for Yang's cell door to be opened and saw Yang had used various jail-issued items to hang himself. (*Id.*) Staff attempted CPR, but Yang succumbed to his injuries. (*Id*.)

Accordingly, Plaintiffs initiated this action on January 11, 2023. (ECF No. 1.) On October 16, 2023, Plaintiffs filed the operative First Amended Complaint ("FAC") alleging: (1) violation of Yang's and Plaintiffs' First and Fourteenth Amendment rights under 42 U.S.C. § 1983 ("§ 1983") against Palmer, Ramos, Boets, and Fithian; (2) § 1983 *Monell* and supervisory liability claims against the County, Palmer, Wellpath LLC, and Fithian; (3) violation of California Civil Code § 52.1 (the "Bane Act") against the County, Palmer, Ramos, Boets, and Fithian; and (4) negligence against Palmer and Ramos. (ECF No. 31.)

## II. STANDARD OF LAW

A motion to dismiss for failure to state a claim upon which relief can be granted under Federal Rule of Civil Procedure ("Rule") 12(b)(6) tests the legal sufficiency of a complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). Rule 8(a) requires that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief." *See Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009). Under notice pleading in federal court, the complaint must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotations omitted).

1 "This simplified notice pleading standard relies on liberal discovery rules and summary judgment motions to define disputed facts and issues and to dispose of unmeritorious claims." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002).

On a motion to dismiss, the factual allegations of the complaint must be accepted as true. *Cruz v. Beto*, 405 U.S. 319, 322 (1972). A court is bound to give the plaintiff the benefit of every reasonable inference to be drawn from the "well-pleaded" allegations of the complaint. *Retail Clerks Int'l Ass'n v. Schermerhorn*, 373 U.S. 746, 753 n.6 (1963). A plaintiff need not allege "'specific facts' beyond those necessary to state his claim and the grounds showing entitlement to relief." *Twombly*, 550 U.S. at 570.

Nevertheless, a court "need not assume the truth of legal conclusions cast in the form of factual allegations." *U.S. ex rel. Chunie v. Ringrose*, 788 F.2d 638, 643 n.2 (9th Cir. 1986). While Rule 8(a) does not require detailed factual allegations, "it demands more than an unadorned, the defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. A pleading is insufficient if it offers mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555; *see also Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). Moreover, it is inappropriate to assume the plaintiff "can prove facts that it has not alleged or that the defendants have violated the . . . laws in ways that have not been alleged." *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983).

Ultimately, a court may not dismiss a complaint in which the plaintiff has alleged "enough facts to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 697. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. at 680. While the plausibility requirement is not akin to a probability requirement, it demands more than "a sheer possibility that a defendant has acted unlawfully." *Id.* at 678. This plausibility inquiry is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

In ruling on a motion to dismiss, a court may consider only the complaint, any exhibits thereto, and matters which may be judicially noticed pursuant to Federal Rule of Evidence 201. *See Mir v. Little Co. of Mary Hosp.*, 844 F.2d 646, 649 (9th Cir. 1988); *Isuzu Motors Ltd. v. Consumers Union of U.S., Inc.*, 12 F. Supp. 2d 1035, 1042 (C.D. Cal. 1998).

If a complaint fails to state a plausible claim, "'[a] district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts.'" *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (en banc) (quoting *Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995)).

### III.   ANALYSIS

County Defendants move to dismiss all claims against them, except for Plaintiffs' deliberate indifference to familial relations claim against Ramos and Palmer.[3]  (ECF No. 37-1.) The Court will address each of Plaintiffs' remaining claims in turn.

#### A.   Deliberate Indifference to Serious Medical Needs

In Claim One, Plaintiffs allege Palmer and Ramos "deprived [Yang] as a pretrial detainee of the rights, privileges, and immunities secured by the Fourteenth Amendment by subjecting him, or through their deliberate indifference, allowing others to subject, to delay and denial of access to medical or mental health care …."[4] (ECF No. 31 at 17.)

Under the Due Process Clause of the Fourteenth Amendment, "persons in custody have the established right to not have officials remain deliberately indifferent to their serious medical needs." *Gibson v. Cnty. of Washoe*, 290 F.3d 1175, 1187 (9th Cir. 2002) (quoting *Carnell v.*

---

[3]   In Claim One, Plaintiffs allege a deliberate indifference to familial relations claim and a deliberate indifference to serious medical needs claim against Ramos and Palmer. (ECF No. 31 at 18.)  In any amended complaint, these claims should be listed separately.

[4]   In their Opposition, Plaintiffs characterize this claim not as a claim for deliberate indifference to a serious medical need, but as a Fourteenth Amendment claim arising out of Ramos and Palmer's "acts and omissions that increased the danger in Yang's conditions of confinement and their failure to protect Yang by providing him with the visual, direct safety check to verify his breathing that is required by Title 15." (ECF No. 39 at 19.)  However, the Court finds this is a distinction without a difference as Plaintiffs seem to concede its claims arise out of Ramos and Palmer's alleged actions or inactions with respect to Yang's mental health condition. (*Id*.)  Moreover, both parties agree Plaintiffs' Complaint must plausibly allege facts under the standard set forth in *Gordon* to survive a motion to dismiss.  (ECF No. 40 at 4.)

*Grimm*, 74 F.3d 977, 979 (9th Cir. 1996)), *overruled on other grounds by Castro v. Cnty. of Los Angeles*, 833 F.3d 1060, 1076 (9th Cir. 2016). To state a plausible claim for failure to provide medical treatment, a plaintiff must plead sufficient facts to permit the court to infer: (1) the plaintiff had a "serious medical need;" and (2) the defendant was "deliberately indifferent" to that need. *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006).

As to the first prong, County Defendants concede Plaintiffs sufficiently allege Yang had a serious medical need in that he suffered from suicidal ideations. (ECF No. 37-1 at 14.)[5]

As to the second prong, the Court must apply the objective deliberate indifference standard because Plaintiffs' claims are based on his status as a pretrial detainee. *See Gordon v. Cty. of Orange*, 888 F.3d 118, 1124–25 (9th Cir. 2018) ("[W]e hold that claims for violations of the right to adequate medical care 'brought by pretrial detainees against individual defendants under the Fourteenth Amendment' must be evaluated under an objective deliberate indifference standard.") (quoting *Castro*, 833 F.3d at 1070)). Pursuant to this standard, a pretrial detainee must allege:

> (i) the defendant made an intentional decision with respect to the conditions under which the plaintiff was confined; (ii) those conditions put the plaintiff at substantial risk of suffering serious harm; (iii) the defendant did not take reasonable available measures to abate that risk, even though a reasonable official in the circumstances would have appreciated the high degree of risk involved—making the consequences of the defendant's conduct obvious; and (iv) by not taking such measures, the defendant caused the plaintiff's injuries.

*Id*. at 1125.

///

---

[5] "The duty to protect detainees from suicide is grounded in the substantive liberty interest to adequate medical care." *Atayde v. Napa State Hosp.*, 255 F. Supp. 3d 978, 988 (E.D. Cal. 2017; *see also Simmons v. Navajo Cnty., Ariz.*, 609 F.3d 1011 (9th Cir. 2010) ("[W]e have previously recognized that a heightened suicide risk can present a serious medical need.")

6

1       Regarding the third element of the *Gordon* test, a "defendant's conduct must be
2 objectively unreasonable, a test that will necessarily turn on the facts and circumstances of each
3 particular case." *Id*. This differs from the Eighth Amendment test for deliberate indifference to
4 the medical needs of convicted inmates which requires that the "prison official must subjectively
5 have a sufficiently culpable state of mind." *Id*. at 1125 n.4 (internal quotations omitted). Put
6 differently, to satisfy the third element of the *Gordon* test a plaintiff need only allege that a
7 reasonable person in the official's position would have realized the high degree of risk — not that
8 the official in question realized such risk. *Id*. at 1125. Still, a plaintiff must allege more than
9 objectively negligent conduct to bring a constitutional claim. *Id*. (requiring plaintiffs to "prove
10 more than negligence but less than subjective intent — something akin to reckless disregard").
11      The Court will first address Plaintiffs' deliberate indifference claim against Ramos and
12 then Plaintiffs' claims against Palmer.

                                  *i.   Ramos*

14      In the instant case, Plaintiffs allege Ramos was deliberately indifferent to Yang's serious
15 medical need because, even though Ramos made timely Title 15 safety checks on Yang, these
16 checks were not thorough enough. (ECF No. 31 at 14.) Specifically, Plaintiffs allege Ramos's
17 hourly safety checks "consisted of nothing more than passing glances and walking by each cell
18 without stopping to visually assess whether the inmate was breathing, or in medical distress, or
19 involved in any prohibited behaviors such as self-harming." (*Id*.) Plaintiffs argue "a reasonable
20 officer would have understood that not performing visual welfare checks would increase the risk
21 to any inmate." (ECF No. 39 at 20.)
22      With regards to the first and second *Gordon* elements, the Court finds the FAC plausibly
23 alleges Ramos made the intentional decision to conduct allegedly insufficient hourly safety
24 checks, which exposed Yang to a substantial risk of suffering a serious harm because Ramos gave
25 Yang the opportunity to engage in self-harm. *See Castro* 833 F.3d at 1071–72; (*See* ECF No. 31
26 at 14.)
27      However, with regards to the third *Gordon* element, County Defendants argue Ramos's
28 conduct was not objectively unreasonable because Plaintiffs have not alleged Ramos was aware

                                            7

of Yang's suicide risk and intentionally chose not to abate that risk, and "[n]o reasonable official under these circumstances would have appreciated that Yang was at a high risk of suicide based on these facts." (ECF No. 37-1 at 14–16.)

The Court agrees with County Defendants that there are no allegations that indicate Ramos was aware of a substantial risk of serious harm to Yang. Specifically, Plaintiffs do not allege Ramos knew Yang had previously been on suicide watch, had any interactions with Yang where he could have observed Yang's potentially suicidal behavior, or had access to Yang's medical records which could have shown his history of suicidal ideation. To survive the instant motion to dismiss, Plaintiffs must allege sufficient facts which would indicate that a "reasonable official in the[se] circumstances would have appreciated the high degree of risk involved." *Castro*, 833 F.3d at 1071). Applying this objective standard to Ramos, a reasonable prison officer, who is not aware that a detainee in general population was at a heightened suicide risk, would not necessarily appreciate any high degree of risk from not conducting a more thorough safety check beyond glancing into the detainee's cell. *See Cavanaugh v. Cnty. of San Diego*, No. 3:18-CV-02557-BEN-LL, 2020 WL 6703592, at *13 (S.D. Cal. Nov. 12, 2020) (finding prison officials cannot be deliberately indifferent to a medical need that is hidden or unknown), *aff'd*, No. 20-56311, 2021 WL 6103115 (9th Cir. Dec. 22, 2021); *Arceo v. City of Roseville*, No. 2:20-CV-02334-DAD-DB, 2024 WL 871463, at *7 (E.D. Cal. Feb. 28, 2024) (finding a lack of knowledge of a serious medical need defeats a deliberate indifference claim). At most, the FAC alleges Ramos was potentially negligent in his safety checks, which is insufficient under § 1983. *Castro*, 833 F.3d at 1071; *see also Jack v. Cnty. of Stanislaus*, No. 1:17-CV-0520 AWI SAB, 2017 WL 4123930 (E.D. Cal. Sept. 15, 2017) ("Without some clearer description of how Pearson and Gunsolley failed to properly perform safety checks, as well as a clearer description of the risk to Jack created by the deputies' respective conduct in performing the safety checks (if they did), there is at best a negligence claim that is pled, but not a plausible Fourteenth Amendment deliberate indifference claim.").

Accordingly, the Court GRANTS County Defendants' motion to dismiss Plaintiffs' deliberate indifference to a serious medical need claim against Ramos. Additionally, the Court

will give Plaintiffs an opportunity to amend this claim based on the liberal standard in favor of granting leave to amend. *See Moss v. U.S. Secret Serv.*, 572 F.3d 962, 972 (9th Cir. 2009) ("Courts are free to grant a party leave to amend whenever justice so requires, and request for leave should be granted with extreme liberality.").

*ii. Palmer*

Under *Castro*, Plaintiffs must first allege Palmer "made an intentional decision with respect to the conditions of confinement under which [Yang] was confined" to state a deliberate indifference claim against him. 833 F.3d at 1071. In the instant case, Plaintiffs only make two allegations regarding Palmer in the FAC. First, Plaintiffs allege Palmer was present at a meeting two days before Yang's death, where the decision was made to keep Yang on suicide watch. (ECF No. 31 at 12.) Second, on the day of Yang's death, Plaintiffs allege Palmer discovered Yang's body during a supervisory check of his cell and called for help. (*Id*. at 15.) County Defendants argue these factual allegations do not indicate Palmer made any intentional decisions with regards to Yang's confinement which put Yang at a substantial risk of committing suicide. (ECF No. 37-1 at 14.) The Court agrees with County Defendants. Specifically, Plaintiffs do not allege Palmer was involved in any way with the decision to take Yang off suicide watch and transfer him back to general population, nor do Plaintiffs allege Palmer made any decisions regarding where Yang was housed, his monitoring, or what materials he was provided in his cell. *C.f. Palacios v. Cnty. of San Diego*, No. 20-CV-450-MMA (DEB), 2020 WL 4201686, at *5 (S.D. Cal. July 22, 2020) ("[T]he Court finds that Plaintiff adequately pleads that Unknown Department Personnel made an intentional decision by providing [the decedent] with food in a plastic bag without proper monitoring.) Without more, the Court cannot find Palmer made an intentional decision regarding Yang's conditions of confinement.

Accordingly, the Court GRANTS County Defendants' motion to dismiss Plaintiffs' deliberate indifference to a serious medical need claim against Palmer without prejudice.

///
///
///

B. *Monell* Liability Against the County

A municipality is only liable under § 1983 when its own illegal acts are the "moving force" behind a constitutional violation. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 695 (1978). Thus, a threshold question in determining whether Plaintiffs can establish *Monell* liability against the County is whether Plaintiff has sufficiently alleged Ramos and Palmer committed a constitutional violation. *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986)

In the FAC, Plaintiffs allege Ramos and Palmer violated Yang's right to be free from deliberate indifference to Yang's serious medical needs under the Fourteenth Amendment and Yang and Plaintiffs' rights to be free from wrongful government interference with familial relationships under the First and Fourteenth Amendments. (ECF No. 31 at 18.) While the Court has found Plaintiffs have not sufficiently alleged Ramos and Palmer violated Yang's right to be free from deliberate indifference to a serious medical need, County Defendants have not moved to dismiss Plaintiffs' interference with familial relations claims. Given the lack of briefing on this issue, the Court will not decide the validity of Plaintiffs' interference with familial relations claim at this time. However, even if Plaintiffs have sufficiently alleged an interference with familial relations claim against Ramos and Palmer, Plaintiffs' *Monell* claim against the County still fails because Plaintiffs have not sufficiently alleged an official act of the County was the moving force behind any alleged constitutional violation.

To state a *Monell* claim against a municipality, a plaintiff must allege facts demonstrating "that an 'official policy, custom, or pattern' on the part of [the municipality] was 'the actionable cause of the claimed injury.'" *Tsao v. Desert Palace*, Inc., 698 F.3d 1128, 1143 (9th Cir. 2012) (quoting *Harper v. City of Los Angeles*, 533 F.3d 1010, 1022 (9th Cir. 2008)); *see also Mendiola-Martinez v. Arpaio*, 836 F.3d 1239, 1247 (9th Cir. 2016) (explaining that to establish municipal liability under § 1983, a plaintiff must show a direct causal link between the municipal policy or custom and the alleged constitutional violation).

The Ninth Circuit recognizes four theories for establishing municipal liability under *Monell*: "(1) an official policy; (2) a pervasive practice or custom; (3) a failure to train, supervise, or discipline; or (4) a decision or act by a final policymaker." *Horton by Horton v. City of Santa*

*Maria*, 915 F.3d 592, 602–03 (9th Cir. 2019).  Plaintiffs allege the County is liable under § 1983 based on the second, third, and fourth theories of liability.  (ECF No. 31 at 22.)  The Court will address Plaintiffs' allegations under each theory in turn.

### i. Pervasive Practice or Custom

Plaintiffs allege the County's pervasive custom and practice of failing to put in place sufficient safety protocols for those inmates who have been taken off suicide watch led to Yang's death.[6]  (ECF No. 31 at 6–7.)

Where a plaintiff seeks to establish a *Monell* claim based upon custom or practice, "[they] must show a longstanding practice or custom which constitutes the standard operating procedure of the local government entity … so persistent and widespread that it constitutes a permanent and well settled ... policy." *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996) (internal quotation marks and citations omitted).  Thus, "[l]iability for improper custom may not be predicated on isolated or sporadic incidents; it must be founded upon practices of sufficient duration, frequency, and consistency that the conduct has become a traditional method of carrying out a policy." *Id.*; *Castro v. Cnty. of L.A.*, 833 F.3d 1060, 1076 (9th Cir. 2016) (A plaintiff may not merely "identify a custom or policy, attributable to the municipality, that caused his injury. [He] must also demonstrate that the custom or policy was adhered to with 'deliberate indifference to the constitutional rights of [others]." (quoting *City of Canton, Ohio v. Harris*, 489 U.S. 378, 392 (1989))).  "The custom must be so 'persistent and widespread' that it constitutes a 'permanent and well settled city policy.'" *Hunter v. Cnty. of Sacramento*, 652 F.3d 1225, 1233 (9th Cir. 2011) (quoting *Monell*, 436 U.S. at 691).

---

[6] Throughout the FAC, Plaintiffs often conflate the rolls of Wellpath and the County in the administration of inmate mental healthcare.  Based off Plaintiffs' allegations, it is the Court's understanding that it is Wellpath's, not the County's, responsibility to administer mental health care to inmates and to decide whether to take inmates off suicide watch.  (ECF No. 31 at 6–7 (Wellpath, LLC is a for-profit correctional healthcare provider who the County contracted with for the Jail's mental health care needs, and is responsible for "making and enforcing policies, procedures, supervision, and training related to the mental-health care of inmates at the [Jail], including, but not limited to: properly assessing the mental-health needs, conducting appropriate and adequate suicide risk assessments, and providing appropriate observation and suicide prevention.").)

In the FAC, Plaintiffs allege only one prior incident of an inmate committing suicide while in the County's custody. Specifically, Plaintiffs allege, in January 2017, Betram Hiscock "killed himself on his third suicide attempt since arriving at the Yuba County Jail 77 days earlier …." (ECF No. 31 at 9.) Hiscock's death came after he "received no psychiatric care or medication for over a month, even though he told jail staff during his booking that he had been diagnosed as bipolar and required Abilify to manage his symptoms."[7] (*Id.*) County Defendants argue these allegations do not sufficiently allege a longstanding County custom or practice because they plead a lack of access to mental healthcare, not a failure to take sufficient precautions with those inmates who have been taken off suicide watch. (ECF No. 37-1 at 17.) The Court agrees with County Defendants.

Not only are "one or two incidents … insufficient to establish a custom or policy," but the Court also agrees with County Defendants that *Hiscok* is markedly distinguishable from the facts at issue in this action. *Oyenik v. Corizon Health Inc.*, 696 F. App'x 792, 794 (9th Cir. 2017). Specifically, *Hiscock* involved the death of an inmate who allegedly did not receive necessary psychiatric care or medications. *Estate of Betram Hiscock v. County of Yuba*, No. 2:17-cv-02706-JAM-GGH (E.D. Cal.). By contrast, Plaintiffs allege the County did provide Yang with psychiatric care after sharing his suicidal ideations with prison officials. (ECF No. 31 at 10.) Plaintiffs' *Monell* claims, instead, stem from the County's custom and practice of "failing to ensure an individualized treatment plan is formulated, documented, and followed prior to lifting suicide safety precautions." (*Id.* at 22.) Without a pattern of similar constitutional violations involving the County's failure to provide adequate psychiatric care for suicidal inmates, the FAC merely alleges conclusory allegations regarding deficient County customs and practices and provides no support for the existence of a systemic failure to take sufficient precautions to

---

[7] Plaintiffs also cite an amended consent decree issued in 2019 by in *Hedrick v. Grant*, No. 2:76-cv-00162-EFB (E.D. Cal.), which Plaintiffs allege discusses mental-health care access at the Yuba County Jail. (*Id.*) However, Plaintiffs did not include the consent decree as an attachment or ask the Court to take judicial notice of it. Moreover, "the existence of a remedial plan would not necessarily provide the Court with sufficient detail about what the policy or custom was, or how it was constitutionally deficient." *Mendoza v. Cnty. of San Bernardino*, No. EDCV191056JGBSHKX, 2020 WL 2066142, at *7. (C.D. Cal. Feb. 21, 2020).

monitor and protect those inmates who have been taken off suicide watch.

Thus, the Court finds Plaintiffs fail to allege *Monell* liability based on an unconstitutional practice or custom.

### ii. Failure to Train

A local government's failure to train its employees may also create § 1983 liability when the "failure to train amounts to deliberate indifference to the rights of persons with whom the [employees] come into contact." *City of Canton v. Harris*, 489 U.S. 378, 388 (1989). "The issue is whether the training program is adequate and, if it is not, whether such inadequate training can justifiably be said to represent municipal policy." *Long v. County of Los Angeles*, 442 F.3d 1178, 1186 (9th Cir. 2006). "A pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train." *Connick v. Thompson*, 563 U.S. 51, 62 (2011) (quoting *Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 409 (1997)). However, a plaintiff can "prov[e] a failure-to-train claim without showing a pattern of constitutional violations where 'a violation of federal rights may be a highly predictable consequence of a failure to equip law enforcement officers with specific tools to handle recurring situations.'" *Long*, 442 F.3d at 1186 (quoting *Brown*, 520 U.S. at 409).

In the instant case, Plaintiffs allege the County failed to "institute, require, and enforce proper and adequate training, supervision, policies, and procedures for handling, housing, and caring for mentally ill and/or emotionally disturbed inmates." (ECF No. 31 at 22.) As stated above, the Court finds Plaintiffs have not sufficiently alleged a pattern of similar constitutional violations. Thus, to survive a motion to dismiss, Plaintiffs must allege Yang's death was a highly predictable consequence of the County's failure to train employees on how to handle, house, and care for inmates who have recently been taken off suicide watch. *Connick*, 563 U.S. at 64 (The "single incident theory" represents the Supreme Court's refusal to "foreclose upon the possibility" that the failure to train is so patently obvious that a single constitutional violation can give rise to municipal liability under § 1983.).

Plaintiffs argue "Yang's suicide was the highly predictable consequence of the County's and Wellpath's policy failure, including the failure to train on and require a Suicide Risk

1  Assessment before discharging a detainee from suicide watch." (ECF No. 39 at 23.) County
2  Defendants disagree and argue there is nothing about the circumstances surrounding Yang's death
3  which suggests to the Court that the County's officers so obviously lacked suicide prevention
4  training that it resulted in Yang's death. (ECF No. 37-1 at 18–19.) The Court agrees with
5  Defendants.

As stated previously, nowhere in the FAC do Plaintiffs allege County officers knew or should have known Yang was still at risk of committing suicide after Wellpath took Yang off suicide watch. Critically, Plaintiffs also do not allege Yang was visibly in mental distress after being transferred back to general population, nor do Plaintiffs allege Yang told any of the officers on duty in F-Pod that he was having suicidal ideations or requested mental healthcare. *C.f. Schwartz v. Lassen Cnty. ex rel. Lassen Cnty. Jail (Det. Facility)*, 838 F.Supp.2d 1045, 1058 (E.D. Cal. 2012) (finding plaintiff sufficiently alleged a single constitutional violation was the predictable consequence of a failure to train where the decedent was visibly in medical distress and had requested medical care from facility employees but was refused). Suicide prevention training is critical for those working in jails and prisons, but Plaintiffs have not alleged any factual allegations that the County failed to provide such training to its employees.

Thus, the Court finds Plaintiffs have not sufficiently alleged *Monell* liability based on a failure to train theory.

*iii. Ratification*

Finally, a municipality may be liable if a policymaker, i.e., an official with final policy-making authority, ratified the unconstitutional conduct of a subordinate and the basis for it. *Gillette v. Delmore*, 979 F.2d 1342, 1346–7 (9th Cir. 1992). In the FAC, Plaintiffs allege policymakers approved of Ramos and Palmer's "conduct and decisions in this matter to the extent such individuals were under their supervision and oversight, and have made a deliberate, conscious, and affirmative choice to endorse and ratify such conduct, and the basis for them, which resulted in the death of Yang." (ECF No. 31 at 24.)

The Court agrees with County Defendants that there are several deficiencies in Plaintiffs' allegations regarding ratification. (*See* ECF No. 37-1 at 18.) Principally, Plaintiffs do not

1 identify a "final policymaker" in their allegations. Moreover, Plaintiffs do not articulate any facts
2 surrounding the circumstances of such ratification, such as how it occurred, or plead any causal
3 connection to the alleged constitutional harm. *See Slusher v. City of Napa*, 15-cv-02394-SBA,
4 2015 WL 8527411, at *8 (N.D. Cal. Dec. 11, 2015) (dismissing *Monell* ratification claim where
5 "[t]here are no allegations specifying the particular actions at issue or how and by whom they
6 were ratified"). Thus, the Court finds Plaintiffs have not sufficiently alleged *Monell* based on a
7 ratification theory.
8     Accordingly, given the FAC fails to sufficiently allege *Monell* liability against the County
9 under any theory of liability, the Court GRANTS Defendant's motion to dismiss the County from
10 Claim Two without prejudice.
11             C.     Supervisory Liability Against Palmer
12     In Claim Two, Plaintiffs also allege Palmer is liable in his individual capacity for Ramos's
13 alleged constitutional violations under a theory of supervisory liability. (ECF No. 31 at 19.) A
14 supervisor may be held liable under § 1983 where "there exists either (1) his or her personal
15 involvement in the constitutional deprivation, or (2) a sufficient causal connection between the
16 supervisor's wrongful conduct and the constitutional violation." *Rodriguez v. County of Los*
17 *Angeles*, 891 F.3d 776, 798 (9th Cir. 2018). "The requisite causal connection can be established
18 ... by setting in motion a series of acts by others or by knowingly refusing to terminate a series of
19 acts by others, which the supervisor knew or reasonably should have known would cause others
20 to inflict a constitutional injury." *Id*. "Thus, a supervisor may 'be liable in his individual
21 capacity for his own culpable action or inaction in the training, supervision, or control of his
22 subordinates; for his acquiescence in the constitutional deprivation; or for conduct that showed a
23 reckless or callous indifference to the rights of others." *Id*.
24     In the instant case, Plaintiffs allege Palmer is liable because he failed to properly supervise
25 Ramos in his Title 15 safety checks which ultimately led to a deprivation of Yang's Fourteenth
26 Amendment rights. (ECF No. 31 at 19.) Thus, to state a claim for supervisory liability against
27 Palmer, Plaintiffs must allege (1) Ramos exhibited deliberate indifference to Yang's medical
28 needs; and (2) a sufficient causal connection between Palmer's conduct and Ramos's deliberate

15

indifference.  *Est. of Touloudjian v. California Dep't of Corr.*, No. 220CV00520FLAKSX, 2022 WL 20306146 (C.D. Cal. May 3, 2022).

Given the Court finds the FAC fails to adequately allege Ramos was deliberately indifferent to Yang's medical needs, Plaintiff's claim for supervisory liability must fail.  *See Starr v. Baca*, 652 F.3d 1202, 1207 (9th Cir. 2011).  Moreover, the Court also agrees with County Defendants that Plaintiffs fail to allege sufficient facts that show a causal connection between Palmer's conduct and Ramos's alleged infringement of Yang's Fourteenth Amendment rights.  (*See* ECF No. 37-1 at 21–22.)  For example, Plaintiffs do not allege Palmer was personally involved in overseeing Ramos's Title 15 safety checks, knew they were allegedly deficient, or refused to intervene after becoming aware of Ramos's allegedly deficient safety checks.  *See Sanchez v. Sacramento*, No. 2:19-cv-01545-MCE-AC, 2021 WL 4066262, at *6 (E.D. Cal. Sept. 7, 2021) (holding a plaintiff's § 1983 claim against a supervisory defendant in his individual capacity did not survive a motion to dismiss because the complaint was devoid of factual allegations that the defendant was personally involved in, knew of, or refused to stop the actions of his subordinate officers in a way that caused the infringement of plaintiff's constitutional rights).

Accordingly, the Court GRANTS Defendant's motion to dismiss Palmer from Claim Two without prejudice.

D.  Plaintiffs' Bane Act Claim

In Claim Three, Plaintiffs bring a Bane Act claim against County Defendants.  (ECF No. 31 at 25.)  The Bane Act creates a cause of action against any person who "interferes by threats, intimidation, or coercion, or attempts to interfere by threats, intimidation, or coercion," with the constitutional rights of an individual.  Cal. Civ. Code § 52.1.  The Bane Act "does not require the 'threat, intimidation or coercion' element of the claim to be transactionally independent from the constitutional violation alleged."  *Reese v. Cty. of Sacramento*, 888 F.3d 1030, 1043 (9th Cir. 2018).  For example, "the coercion inherit in a Fourth Amendment violation could support a Bane Act claim."  *Sandoval v. Cnty. of Sonoma*, 912 F.3d 509, 520 (9th Cir. 2018).  However, the Bane Act still requires "a showing of the defendant's specific intent to violate the plaintiff's

16

constitutional rights." *Rodriguez v. Cty. of L.A.*, 891 F.3d 776, 802 (9th Cir. 2018).

In the instant case, Plaintiffs argue they have sufficiently alleged a Bane Act claim against County Defendants because the FAC alleges "Ramos and Palmer failed to perform welfare checks on Yang that were compliant with Title 15." (ECF No. 39 at 26.) Specifically, Plaintiffs allege this conduct provides the factual predicate for Ramos and Palmer's alleged violations of the Fourth and Fourteenth Amendments of the United States Constitution, Article 1, Sections 1, 7, and 13 of the California Constitution, and California Civil Code § 43. (ECF No. 31 at 25.) Plaintiffs further allege Ramos and Palmer acted with reckless disregard of Yang and Plaintiffs' constitutional rights, and the County is vicariously liable. (*Id.*)

However, even if Plaintiff's allegations regarding Title 15 safety checks were enough to satisfy the Bane Act's predicate constitutional violation requirement — which the Court has already found they are not sufficient to state a Fourteenth Amendment deliberate indifference to a serious medical need claim against Ramos and Palmer — Plaintiffs do not allege any facts which suggest Ramos or Palmer acted with the specific intent to violate Yang or Plaintiff's constitutional rights. *Sandoval*, 912 F.3d at 519–20. As stated throughout this Order, Plaintiffs do not allege Ramos or Palmer knew or had any reason to know Yang was still at a heightened suicide risk after he was transferred back into general population. Without these factual allegations, it would be illogical for the Court to conclude Ramos and Palmer completed allegedly deficient Title 15 safety checks with "the particular purpose of depriving [Yang and Plaintiffs] of [their] enjoyment of the interests protect[ed] by [their constitutional] right[s]." *Cornell v. City & Cnty. of San Francisco*, 17 Cal. App. 5th 766, 803 (2017).

Accordingly, the Court GRANTS County Defendants' motion to dismiss Plaintiffs' Bane Act claim against County Defendants without prejudice.

E.     Plaintiffs' Negligence Claim

In Claim Four, Plaintiffs allege Ramos and Palmer were negligent in failing to provide Yang with hourly direct visual safety checks of his cell, and the County is vicariously liable for their actions. (ECF No. 31 at 27.) County Defendants argue they are immune from liability under California Government Code § 845.6. (ECF No. 37-1 at 25–26.) California Government

1   Code § 845.6 provides:

> Neither a public entity nor a public employee is liable for injury proximately caused by the failure of the employee to furnish or obtain medical care for a prisoner in his custody; but ... a public employee, and the public entity where the employee is acting within the scope of his employment, is liable if the employee knows or has reason to know that the prisoner is in need of immediate medical care and he fails to take reasonable action to summon such medical care.

"[U]nder Government Code section 845.6, both a public entity and its employees are immune from claims based on injuries to prisoners caused by a failure to provide medical care, except when an employee, acting within the scope of his employment, fails to provide medical care to a prisoner and has reason to know that need for medical care is immediate." *Lawson v. Superior Ct.*, 180 Cal. App. 4th 1372, 1384 (2010); *see also Arias v. Cnty. of Los Angeles*, No. CV2106865MWFKES, 2022 WL 1557057, at *3 (C.D. Cal. Mar. 29, 2022) (Thus, "[a] fair reading of section 845.6 reveals that a public employee is liable if he fails to summon medical care in situations where the need for medical care is known … [b]ut in situations where the need for medical care is unknown, the public employee is immune from liability.").

In opposition, Plaintiffs argue § 845.6 is inapplicable because their "negligence claim stems from [Ramos and Palmer's] failure to comply with their duties as jailors, including Title 15 — not their failure to summon medical care." The Court disagrees with Plaintiffs. As alleged, Plaintiffs' negligence claims stem from Ramos and Palmer's alleged failure to properly monitor Yang given his heightened suicide risk. (ECF No. 31 at 26–27.) In applying § 845.6 to cases involving a detainee or inmate's suicide, district courts across the Ninth Circuit have consistently found that suicide is a mental health problem for which incarcerated individuals have right to receive medical care, which can include withholding items that can be used for self-harm and providing additional surveillance. *Arias*, 2022 WL 1557057, at *3 (citing cases) ("[S]ection 845.6 is applicable to cases of suicide.") Thus, "where a suicide occurs and the need for medical

1  care was unknown, public entities and employees are immune from suit under section 845.6."

2  *Id.*; *see also Arceo v. City of Roseville*, No. 2:20-CV-02334-DAD-DB, 2024 WL 871463 (E.D.

3  Cal. Feb. 28, 2024).

4      Given Plaintiffs have not alleged Ramos or Palmer knew or should have known Yang

5  needed medical care because he was at imminent risk of committing suicide, the Court finds

6  County Defendants are immune from Plaintiffs' negligence claims.

7      Accordingly, the Court GRANTS County Defendants' motion to dismiss Plaintiff's

8  negligence claim against County Defendants without prejudice.

9      **IV.   CONCLUSION**

10      For the reasons set forth above, the Court hereby GRANTS County Defendants' Motion

11  to Dismiss (ECF No. 37) with leave to amend.  Plaintiffs may file an amended complaint no later

12  than twenty-one (21) days from the electronic filing date of this Order.  If Plaintiffs file an

13  Amended Complaint, Wellpath Defendants and County Defendants shall file any responsive

14  pleading not later than twenty-one (21) days from the filing and service of any amended

15  complaint.  If Plaintiffs opt to not amend their complaint, this action will proceed on all

16  remaining claims in the FAC (Claims One, Two, and Three against Wellpath Defendants and

17  Plaintiff's deliberate indifference to familial relations allegations in Claims One and Two against

18  the County Defendants).

19      IT IS SO ORDERED.

20  Dated: June 12, 2024

21                              Troy L. Nunley

22                              United States District Judge

19