1

2

3

4

5

6

7                                  UNITED STATES DISTRICT COURT

8                                  EASTERN DISTRICT OF CALIFORNIA

9

10    CHUE DOA YANG, et al.,

11            Plaintiffs,                              No. 2:23-cv-00066-TLN-JDP

12        v.

13    COUNTY OF YUBA, et al.,                          **ORDER**

14            Defendants.

15

16          This matter is before the Court on Defendants County of Yuba (the "County"), Jeffrey T.

17    Palmer ("Palmer"), and Ismael Ramos's ("Ramos") (collectively, "County Defendants") Motion

18    to Dismiss.[1]  (ECF No. 53.)  Plaintiffs Chue Doa Yang and Mai Thao Yang (collectively,

19    "Plaintiffs") filed an opposition.  (ECF No. 54.)  County Defendants filed a reply.  (ECF No. 56.)

20    For the reasons set forth below, the Court GRANTS in part and DENIES in part County

21    Defendants' motion.

22    ///

23    ///

24    ///

25    ///

26

27    ───────────────────
      [1]      Defendants Wellpath, LLC, Christina Boets ("Boets"), and Taylor Fithian ("Fithian")
28    (collectively, "Wellpath Defendants") filed an answer to Plaintiffs' Second Amended Complaint
      (*see* ECF No. 52), and thus are not party to the instant motion to dismiss.

                                                    1

## I.   FACTUAL AND PROCEDURAL BACKGROUND

The facts of this case are set forth in full in this Court's June 13, 2024 Order and are incorporated herein by reference.  (ECF No. 42.)  On June 13, 2024, the Court granted County Defendants' motion to dismiss with leave to amend.  (*Id*.)  On July 5, 2024, Plaintiffs filed the operative Second Amended Complaint ("SAC") alleging claims for: (1) deliberate indifference to serious medical needs under 42 U.S.C. § 1983 ("§ 1983") against Palmer, Ramos, Boets, and Fithian; (2) deprivation of familial relations under § 1983 against Palmer, Ramos, Boets, and Fithian; (3) § 1983 *Monell* liability against the County and Wellpath LLC; (4) § 1983 supervisory liability against Palmer and Fithian; (5) violation of California Civil Code § 52.1(b) (the "Bane Act") against Palmer, Ramos, Boets, and Fithian; and (6) negligence against Palmer, Ramos, the County, Boets, and Wellpath LLC.  (ECF No. 44.)

On July 25, 2024, County Defendants filed the instant motion to dismiss.  (ECF No. 53.)  On August 8, 2024, Plaintiffs filed an opposition.  (ECF No. 54.)  On August 13, 2024, County Defendants filed a reply.  (ECF No. 56.)

## II.   STANDARD OF LAW

A motion to dismiss for failure to state a claim upon which relief can be granted under Federal Rule of Civil Procedure ("Rule") 12(b)(6) tests the legal sufficiency of a complaint.  *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).  Rule 8(a) requires that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009).  Under notice pleading in federal court, the complaint must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests."  *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007) (internal citation and quotations omitted).  "This simplified notice pleading standard relies on liberal discovery rules and summary judgment motions to define disputed facts and issues and to dispose of unmeritorious claims."  *Swierkiewicz v. Sorema N.A*., 534 U.S. 506, 512 (2002).

On a motion to dismiss, the factual allegations of the complaint must be accepted as true.  *Cruz v. Beto*, 405 U.S. 319, 322 (1972).  A court must give the plaintiff the benefit of every reasonable inference to be drawn from the "well-pleaded" allegations of the complaint.  *Retail*

1  *Clerks Int'l Ass'n v. Schermerhorn*, 373 U.S. 746, 753 n.6 (1963).  A plaintiff need not allege

2  "'specific facts' beyond those necessary to state his claim and the grounds showing entitlement to

3  relief." *Twombly*, 550 U.S. at 570 (internal citation omitted).

4          Nevertheless, a court "need not assume the truth of legal conclusions cast in the form of

5  factual allegations." *U.S. ex rel. Chunie v. Ringrose*, 788 F.2d 638, 643 n.2 (9th Cir. 1986).

6  While Rule 8(a) does not require detailed factual allegations, "it demands more than an

7  unadorned, the defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678.  A

8  pleading is insufficient if it offers mere "labels and conclusions" or "a formulaic recitation of the

9  elements of a cause of action." *Twombly*, 550 U.S. at 555; *see also Iqbal*, 556 U.S. at 678

10  ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory

11  statements, do not suffice.").  Thus, "[c]onclusory allegations of law and unwarranted inferences

12  are insufficient to defeat a motion to dismiss" for failure to state a claim.  *Adams v. Johnson*, 355

13  F.3d 1179, 1183 (9th Cir. 2004) (citations omitted).  Moreover, it is inappropriate to assume the

14  plaintiff "can prove facts that it has not alleged or that the defendants have violated the . . . laws

15  in ways that have not been alleged." *Associated Gen. Contractors of Cal., Inc. v. Cal. State*

16  *Council of Carpenters*, 459 U.S. 519, 526 (1983).

17          Ultimately, a court may not dismiss a complaint in which the plaintiff has alleged "enough

18  facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.  "A claim

19  has facial plausibility when the plaintiff pleads factual content that allows the court to draw the

20  reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at

21  680.  While the plausibility requirement is not akin to a probability requirement, it demands more

22  than "a sheer possibility that a defendant has acted unlawfully." *Id.* at 678.  This plausibility

23  inquiry is "a context-specific task that requires the reviewing court to draw on its judicial

24  experience and common sense." *Id.* at 679.  Thus, only where a plaintiff fails to "nudge [his or

25  her] claims . . . across the line from conceivable to plausible[,]" is the complaint properly

26  dismissed.  *Id.* at 680 (internal quotations omitted).

27          In ruling on a motion to dismiss, a court may consider only the complaint, any exhibits

28  thereto, and matters which may be judicially noticed pursuant to Federal Rule of Evidence 201.

1   *See Mir v. Little Co. of Mary Hosp.*, 844 F.2d 646, 649 (9th Cir. 1988); *Isuzu Motors Ltd. v.*

2   *Consumers Union of U.S., Inc.*, 12 F. Supp. 2d 1035, 1042 (C.D. Cal. 1998); *see also Daniels-*

3   *Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010) (the court need not accept as true

4   allegations that contradict matters properly subject to judicial notice).

5          If a complaint fails to state a plausible claim, "'[a] district court should grant leave to

6   amend even if no request to amend the pleading was made, unless it determines that the pleading

7   could not possibly be cured by the allegation of other facts.'"  *Lopez v. Smith*, 203 F.3d 1122,

8   1130 (9th Cir. 2000) (en banc) (quoting *Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995));

9   *see also Gardner v. Martino*, 563 F.3d 981, 990 (9th Cir. 2009) (finding no abuse of discretion in

10  denying leave to amend when amendment would be futile).  Although a district court should

11  freely give leave to amend when justice so requires under Rule 15(a)(2), "the court's discretion to

12  deny such leave is 'particularly broad' where the plaintiff has previously amended its complaint."

13  *Ecological Rights Found. v. Pac. Gas & Elec. Co.*, 713 F.3d 502, 520 (9th Cir. 2013) (quoting

14  *Miller v. Yokohama Tire Corp.*, 358 F.3d 616, 622 (9th Cir. 2004)).

15    **III.   ANALYSIS**

16         County Defendants move to dismiss all claims against them.  (ECF No. 53-1.)  The Court

17  will address each claim in turn.

18         A.    Deliberate Indifference to Serious Medical Needs

19         In Claim One, Plaintiffs allege Palmer and Ramos "deprived [Yang] as a pretrial detainee

20  of the rights, privileges, and immunities secured by the Fourteenth Amendment by subjecting

21  him, or through their deliberate indifference, allowing others to subject, to delay and denial of

22  access to medical or mental health care . . . ."  (ECF No. 44 at 24.)

23         Under the Due Process Clause of the Fourteenth Amendment, "persons in custody have

24  the established right to not have officials remain deliberately indifferent to their serious medical

25  needs."  *Gibson v. County of Washoe*, 290 F.3d 1175, 1187 (9th Cir. 2002) (quoting *Carnell v.*

26  *Grimm*, 74 F.3d 977, 979 (9th Cir. 1996)), *overruled on other grounds by Castro v. County of Los*

27  *Angeles*, 833 F.3d 1060, 1076 (9th Cir. 2016).  To state a plausible claim for failure to provide

28  medical treatment, a plaintiff must plead sufficient facts to permit the court to infer: (1) the

4

1   plaintiff had a "serious medical need"; and (2) the defendant was "deliberately indifferent" to that

2   need.  *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006).

3           As to the first prong, the Court's June 13, 2024 Order found County Defendants conceded

4   Plaintiffs had sufficiently alleged that Yang had a serious medical need because he suffered from

5   suicidal ideations.  (ECF No. 42 at 6.)

6           As to the second prong, the Court must apply the objective deliberate indifference

7   standard because Plaintiffs' claims are based on his status as a pretrial detainee.  *See Gordon v.*

8   *County of Orange*, 888 F.3d 1118, 1124–25 (9th Cir. 2018) ("[W]e hold that claims for violations

9   of the right to adequate medical care 'brought by pretrial detainees against individual defendants

10  under the Fourteenth Amendment' must be evaluated under an objective deliberate indifference

11  standard.") (quoting *Castro*, 833 F.3d at 1070)).  Pursuant to this standard, a pretrial detainee

12  must allege:

13                  (i) the defendant made an intentional decision with respect to the
                    conditions under which the plaintiff was confined; (ii) those
14                  conditions put the plaintiff at substantial risk of suffering serious
                    harm; (iii) the defendant did not take reasonable available measures
15                  to abate that risk, even though a reasonable official in the
                    circumstances would have appreciated the high degree of risk
16                  involved—making the consequences of the defendant's conduct
                    obvious; and (iv) by not taking such measures, the defendant caused
17                  the plaintiff's injuries.

18  *Id.* at 1125.

19          Regarding the third element of the *Gordon* test, a "defendant's conduct must be

20  objectively unreasonable, a test that will necessarily turn on the facts and circumstances of each

21  particular case."  *Id.*  This differs from the Eighth Amendment test for deliberate indifference to

22  the medical needs of convicted inmates which requires that the "prison official must subjectively

23  have a sufficiently culpable state of mind."  *Id*. at 1125 n.4 (internal quotations omitted).  Put

24  differently, to satisfy the third element of the *Gordon* test a plaintiff need only allege that a

25  reasonable person in the official's position would have realized the high degree of risk — not that

26  the official in question realized such risk.  *Id*. at 1125.  Still, a plaintiff must allege more than

27  objectively negligent conduct to bring a constitutional claim.  *Id*. (requiring plaintiffs to "prove

28  more than negligence but less than subjective intent — something akin to reckless disregard").

1    The Court will first address Plaintiffs' deliberate indifference claim against Ramos and

2    then Plaintiffs' claim against Palmer.

3                                         i.      *Ramos*

4    As to the first two elements of the *Gordon* test, the Court already found the First Amended

5    Complaint ("FAC") plausibly alleges Ramos made the intentional decision to conduct allegedly

6    insufficient hourly safety checks, which exposed Yang to a substantial risk of suffering a serious

7    harm because Ramos gave Yang the opportunity to engage in self-harm.  (ECF No. 42 at 7.)

8    Since the SAC includes the same allegations, the SAC also plausibly alleges the first two

9    elements of the *Gordon* test.  (*See* ECF No. 44.)

10   As to the third element of the *Gordon* test, the thrust of County Defendants' argument is

11   that they cannot be "deliberately indifferent to a medical need that is hidden or unknown."  (ECF

12   No. 53-1 at 13.)  County Defendants argue the SAC does not plausibly allege that Defendants

13   knew Yang was a substantial suicide risk, nor does it allege they intentionally chose not to abate

14   that risk.  (*Id.*)  County Defendants further argue there are no allegations that Ramos had directly

15   interacted with Yang, was aware of the details of Yang's court hearing, or had access to Yang's

16   medical records.  (*Id.* at 14.)  County Defendants concede Plaintiffs allege Ramos knew Yang

17   was previously on suicide watch, but argue Ramos also knew Yang was medically cleared to

18   return to regular housing.  (*Id.*)

19   In opposition, Plaintiffs contend Ramos knew Yang had been on suicide watch, and

20   Ramos and Yang had contact after Yang's first court appearance.  (ECF No. 54 at 18.)  Plaintiffs

21   contend that, given these circumstances, a reasonable correctional officer would have appreciated

22   the high degree of risk involved in conducting insufficient welfare checks.  (*Id.*)

23   In its previous Order, the Court noted that Plaintiffs do not allege in the FAC that Ramos

24   knew Yang had previously been on suicide watch, had any interactions with Yang where he could

25   have observed Yang's potentially suicidal behavior, or had access to Yang's medical records

26   which could have shown his history of suicidal ideation.  (ECF No. 42 at 8.)  Plaintiff has fixed

27   some of these deficiencies in the SAC.  Specifically, the SAC alleges that after Yang's death,

28   Ramos told homicide detectives he knew Yang "had been on suicide watch, on 'step-down

checks' the previous days, and that this was Yang's first day in a normal cell." (ECF No. 44 at 19.)  The SAC further alleges that Ramos had contact with Yang after the court appearance which caused Yang distress.  (*Id.* at 20.)  While Plaintiffs do not allege Ramos knew of Yang's specific medical history, it is still plausible that Ramos was aware of a substantial risk of serious harm to Yang.  Namely, Ramos knew that Yang had been on suicide watch after a court appearance only one day before.  The Court agrees with Plaintiffs that a reasonable officer would appreciate the high degree of risk under these circumstances.  Thus, the third element of the *Gordon* test is plausibly alleged.

As to the fourth element of the *Gordon* test, County Defendants do not address it in their motion.  (*See* ECF No. 53-1.)  Plaintiffs contend that by conducting insufficient welfare checks, "Ramos caused Yang's injuries because he failed to protect Yang and instead afforded Yang, a suicidal man, the uninterrupted opportunity to asphyxiate himself, despite . . . seeing the unconvincing bump in Yang's bed, and seeing his feet sticking out from the toilet area." (ECF No. 54 at 18.)  The Court finds the causal link here plausible.  In the SAC, Plaintiffs allege Ramos conducted safety checks that "consisted of nothing more than passing glances and walking by each cell without stopping to visually assess whether the inmate inside was breathing, or in medical distress, or involved in any prohibited behaviors, such as self-harming." (ECF No. 44 at 20.)  Plaintiffs allege on information and belief that Ramos saw an unconvincing bump in Yang's bed, and had the ability to see Yang's feet, an entire hour before Palmer discovered Yang.  (*Id.* at 20–21.)  It is therefore plausible that Ramos's failure to conduct sufficient welfare checks contributed to Yang's injuries by allowing Yang the opportunity to asphyxiate himself without being discovered sooner.

Accordingly, the Court DENIES County Defendants' motion to dismiss Plaintiffs' deliberate indifference to a serious medical need claim against Ramos.

### ii.      Palmer

As previously stated, under the first element of the *Gordon* test, Plaintiffs must allege "the defendant made an intentional decision with respect to the conditions under which [Yang] was confined." *Gordon*, 888 F.3d at 1125.  The Court previously found the FAC did not allege

7

1    Palmer made any intentional decisions with respect to Yang's conditions of confinement.  (ECF

2    No. 42 at 9.)  "Specifically, Plaintiffs do not allege Palmer was involved in any way with the

3    decision to take Yang off suicide watch and transfer him back to general population, nor do

4    Plaintiffs allege Palmer made any decisions regarding where Yang was housed, his monitoring, or

5    what materials he was provided in his cell."  (*Id.*)

6         County Defendants reiterate the Court's findings and argue Palmer only had one

7    interaction regarding Yang before discovering his death: his presence at a meeting two days

8    before Yang's death where Boets made the decision to continue suicide watch.  (ECF No. 53-1 at

9    15; ECF No. 56 at 5.)  County Defendants contend Plaintiffs do not allege Palmer was involved in

10   any way with the decision to take Yang off suicide watch and transfer him back to general

11   population nor do Plaintiffs allege Palmer made any decisions regarding where Yang was housed,

12   his monitoring, or what materials he was provided in his cell.  (ECF No. 53-1 at 15.)  In

13   opposition, Plaintiffs contend Palmer made three intentional decisions by omission: (1) failing to

14   develop a safety plan for Yang despite knowing he was suicidal and posed a danger to himself;

15   (2) failing to train and supervise Ramos to ensure adequate welfare checks of Yang; and (3)

16   failing to adequately staff the jail with enough correctional officers.  (ECF No. 54 at 19.)

17        The Court does not find Plaintiffs' arguments convincing.  Plaintiffs attempt to amend the

18   deficiencies in their FAC by making conclusory statements that draw a tenuous connection

19   between Palmer's role as a supervisor and the general conditions of Yang's confinement.

20   Plaintiffs still do not allege Palmer was involved in any way with the decision to take Yang off

21   suicide watch and transfer him back to general population, nor do Plaintiffs allege Palmer made

22   any decisions regarding where Yang was housed, his monitoring, or what materials he was

23   provided in his cell.  Thus, Plaintiffs still do not allege Palmer, as an individual defendant, made

24   any intentional decisions regarding the specific conditions of Yang's confinement.

25        The Court previously granted Plaintiffs leave to amend this claim and identified identical

26   deficiencies in the FAC, which Plaintiffs did not fix in their SAC.  Accordingly, the Court

27   GRANTS County Defendants' motion to dismiss Plaintiffs' claim for deliberate indifference to a

28   serious medical need against Palmer with prejudice.  *See Ecological Rights Found.*, 713 F.3d at

8

520 ("the court's discretion to deny [leave to amend] is 'particularly broad' where the plaintiff has previously amended its complaint.").

### B.      Deprivation of Familial Relations

In Claim Two, Plaintiffs allege the actions of Defendants deprived Plaintiffs of their liberty interest in their relationship with their father and son and amounted to a violation of their substantive due process rights.  (ECF No. 44 at 27 – 28.)

To state a claim for loss of familial association, a plaintiff must show that official conduct "'shocks the conscience' in depriving family members of a liberty interest in the companionship and society of a family member[.]"  *Est. of Osuna v. County of Stanislaus*, 392 F. Supp. 3d 1162, 1176 (E.D. Cal. 2019) (citing *Wilkinson v. Torres*, 610 F.3d 546, 554 (9th Cir. 2010)).  "In determining whether excessive force shocks the conscience, the court must first ask whether the circumstances are such that actual deliberation by the officer is practical . . . Where actual deliberation is practical, an officer's deliberate indifference may suffice to shock the conscience."  *Wilkinson*, 610 F.3d at 554 (internal citations and quotations omitted).  Moreover, "[r]ecovery for a violation of the right to familial association is generally contingent on the existence of an underlying constitutional violation."  *Schwarz v. Lassen County ex rel. Lassen County Jail*, 628 F. App'x 527, 528 (9th Cir. 2016).

County Defendants do not address the merits of this claim and argue that because Plaintiffs have failed to establish the claim for deliberate indifference, this derivative claim based on an underlying constitutional violation also fails.  (ECF No. 53-1 at 16.)  In opposition, Plaintiffs argue that Ramos and Palmer had time to deliberate before failing to perform adequate safety checks on Yang.  (ECF No. 54 at 20.)

#### i.      Ramos

The Court agrees with Plaintiffs regarding Ramos.  Plaintiffs allege Ramos conducted three hourly safety checks, which only lasted a few minutes each.  (ECF No. 44 at 20.)  Plaintiffs allege Ramos conducted a safety check from 11:39 p.m. to 11:42 p.m., at which point Yang had placed clothing under his bed to create the appearance he was sleeping.  (*Id.*)  Plaintiffs further allege Yang's feet were visible, Ramos left the F-Pod at 11:42 p.m. to take his lunch break, and

1   Yang was not discovered for another hour.  (*Id.*)

2         As alleged in the SAC, it is plausible that Ramos had time to deliberate on the detail and

3   duration of the safety checks, which occurred three times, each an hour apart.  Therefore, it is

4   plausible that Ramos had time to deliberate before failing to perform adequate safety checks on

5   Yang, which would constitute deliberate indifference that shocks the conscience.  *Wilkinson*, 610

6   F.3d at 554.

7         Accordingly, the Court DENIES County Defendants' motion to dismiss Plaintiffs'

8   deprivation of familial relations claim against Ramos.

9                       *ii.*        *Palmer*

10        Because the Court finds Plaintiffs have not stated a plausible claim for deliberate

11  indifference against Palmer, the derivative claim for deprivation of familial relations necessarily

12  also fails.  Accordingly, the Court GRANTS County Defendants' motion to dismiss Plaintiffs'

13  deprivation of familial relations claim against Palmer with prejudice.

14               C.        *Monell* Liability Against the County

15        In Claim Three, Plaintiffs allege County Defendants failed to adequately train and

16  supervise to ensure compliance with an Amended Consent Decree,[2] provided constitutionally

17  insufficient levels of staffing, and had a custom and practice of inadequate mental healthcare for

18  suicidal inmates.  (ECF No. 44 at 29–41.)

19        To state a *Monell* claim against a municipality, a plaintiff must allege facts demonstrating

20  "that an 'official policy, custom, or pattern' on the part of [the municipality] was 'the actionable

21  cause of the claimed injury.'"  *Tsao v. Desert Palace*, Inc., 698 F.3d 1128, 1143 (9th Cir. 2012)

22  (quoting *Harper v. City of Los Angeles*, 533 F.3d 1010, 1022 (9th Cir. 2008)); *see also Mendiola-*

23  *Martinez v. Arpaio*, 836 F.3d 1239, 1247 (9th Cir. 2016) (explaining that to establish municipal

24  liability under § 1983, a plaintiff must show a direct causal link between the municipal policy or

25  custom and the alleged constitutional violation).

26

27  _____
    [2]       Plaintiffs do not provide further details of this Amended Consent Decree, other than to
28  state that the Amended Consent Decree "governed the care that was required to be provided to
    Mr. Yang."  (ECF No. 44 at 2.)

                                          10

The Ninth Circuit recognizes four theories for establishing municipal liability under *Monell*: "(1) an official policy; (2) a pervasive practice or custom; (3) a failure to train, supervise, or discipline; or (4) a decision or act by a final policymaker." *Horton by Horton v. City of Santa Maria*, 915 F.3d 592, 602–03 (9th Cir. 2019). Plaintiffs allege the County is liable under § 1983 based on the second and third theories of liability.[3] (ECF No. 54 at 20.) The Court will address Plaintiffs' allegations under each theory in turn.

### i. Pervasive Practice or Custom

County Defendants contend Plaintiffs do not identify instances of failure to properly classify inmates, failure to maintain appropriate staffing, failure to supervise staff, covering up violations, or similarly situated inmates receiving inadequate care.[4] (ECF No. 53-1 at 18.) County Defendants further contend that Plaintiffs do not relate the Amended Consent Decree to Yang or actions by correctional officers. (*Id.*)

In opposition, Plaintiffs argue that the County had an unconstitutional practice or custom of (1) failing to sufficiently staff Yuba County Jail to ensure adequate welfare checks and (2) failing to provide prompt psychiatric care.[5] (ECF No. 54 at 21.) Plaintiffs further argue that they identify the County's unconstitutional custom of failing to sufficiently staff the Jail in compliance with Title 15 of the California Code of Regulations and the Amended Consent Decree. (*Id.*)

---

[3]   Plaintiffs also allege liability under the fourth theory of *Monell* liability in the FAC and appear to do so in the SAC. However, Plaintiffs clarify in their opposition that they are alleging a claim against the County under two theories of *Monell* liability: (1) pervasive practice or custom; and (2) a failure to train. (ECF No. 54 at 20–24.) Accordingly, the Court will only address these two theories.

[4]   County Defendants also argue Plaintiffs still only allege one prior incident of an inmate committing suicide at the Yuba County Jail and reiterate that *Estate of Bertram Hiscock v. County of Yuba*, No. 2:17-cv-02706-JAM-GGH (E.D. Cal. 2018) is distinguishable from this instant case, and that even if *Hiscock* is similar, Plaintiffs' alleged instance of prior inadequate medical care is conclusory. (*Id.* at 18.) The Court has already stated in its prior June 13, 2024 Order that *Hiscock* is markedly distinguishable from the instant case and need not readdress these arguments here. (ECF No. 42 at 12.)

[5]   Plaintiffs also argue that because Wellpath did not file a motion to dismiss this claim and filed an Answer, this claim must be well-pleaded. For the reasons set forth below, the Court finds this argument unconvincing.

1    Plaintiffs contend they also identify in the SAC the County's custom of providing inadequate

2    mental health care for suicidal inmates and pursuant to this custom Fithian failed to provide a

3    needed psychiatric consult for Yang, "who was acutely psychotic and in desperate need of anti-

4    psychotic medications."  (*Id.* at 21–22.)

5         The Court previously noted that to state a claim for pervasive practice or custom under

6    *Monell*, Plaintiffs must allege a pattern of similar constitutional violations involving the County's

7    failure to provide adequate psychiatric care for suicidal inmates.  (ECF No. 42 at 12.)  Plaintiffs

8    have not done so. While Plaintiffs attempt to add another pervasive practice or custom to their

9    claim, namely the practice or custom of the County's staffing practices, they fail to provide

10   adequate support for either practice or custom.  Thus, the Court agrees with County Defendants

11   that Plaintiffs have still not provided any support for the existence of a systemic failure to

12   maintain appropriate staffing or provide prompt care.  While Plaintiffs have submitted a

13   declaration (*see* ECF No. 54-1) which references previous instances of recent suicide attempts at

14   the Jail, these facts cannot be considered on this motion.  *See Swartz v. KPMG LLP*, 476 F.3d

15   756, 763 (9th Cir. 2007) ("In ruling on a 12(b)(6) motion, a court may generally consider only

16   allegations contained in the pleadings, exhibits attached to the complaint, and matters properly

17   subject to judicial notice.").

18        Accordingly, the Court GRANTS County Defendants' motion to dismiss Plaintiffs'

19   *Monell* claim under the "pervasive practice or custom" theory of liability.  County Defendants

20   argue Plaintiffs should not be allowed to submit a Third Amended Complaint.  (ECF No. 56 at 8.)

21   County Defendants argue that all facts known to Plaintiffs were available at the time of filing of

22   the earlier motion, that Plaintiffs fail to explain why they did not raise the facts in their

23   declaration earlier, and that Plaintiffs are represented by three different offices.  (*Id.*)  Indeed, the

24   Court notes that Plaintiffs have already filed three different complaints in this case and Plaintiffs

25   have not addressed the deficiencies outlined in the Court's previous June 13, 2024 Order.

26   Accordingly, the Court dismisses this claim with prejudice.  *See Ecological Rights Found.*, 713

27   F.3d at 520 ("the court's discretion to deny [leave to amend] is 'particularly broad' where the

28   plaintiff has previously amended its complaint.").

*ii.     Failure to Train*

A local government's failure to train its employees may also create § 1983 liability when the "failure to train amounts to deliberate indifference to the rights of persons with whom the [employees] come into contact." *City of Canton v. Harris*, 489 U.S. 378, 388 (1989). "The issue is whether the training program is adequate and, if it is not, whether such inadequate training can justifiably be said to represent municipal policy." *Long v. County of Los Angeles*, 442 F.3d 1178, 1186 (9th Cir. 2006). "A pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train." *Connick v. Thompson*, 563 U.S. 51, 62 (2011) (quoting *Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 409 (1997)). However, a plaintiff can "prov[e] a failure-to-train claim without showing a pattern of constitutional violations where 'a violation of federal rights may be a highly predictable consequence of a failure to equip law enforcement officers with specific tools to handle recurring situations.'" *Long*, 442 F.3d at 1186 (quoting *Brown*, 520 U.S. at 409).

County Defendants argue Plaintiffs do not allege what training Jail personnel did or did not receive, or causally connect the deficiencies in that training to the harm Yang suffered. (ECF No. 53-1 at 19.) County Defendants contend Plaintiffs fail to "allege Yang's death was a highly predictable consequence of the County's failure to train employees on how to handle, house, and care for inmates who have recently been taken off suicide watch." (*Id.*) In opposition, Plaintiffs contend the County failed to train officers on the Amended Consent Decree, including proper completion of safety checks. (ECF No. 54 at 22.) Specifically, Plaintiffs maintain Ramos's safety checks did not comply with the Amended Consent Decree and were "grossly inadequate" in assessing whether Yang was engaging in self-harming behaviors. (*Id.* at 23.)

As a preliminary matter, the Court previously noted that nowhere in the FAC do Plaintiffs allege County officers knew or should have known Yang was still at risk of committing suicide after Wellpath took Yang off suicide watch. (ECF No. 42 at 14.) In addition, the Court noted Plaintiffs also do not allege Yang was visibly in mental distress after being transferred back to general population, nor do Plaintiffs allege Yang told any of the officers on duty in F-Pod that he was having suicidal ideations or requested mental healthcare. (*Id.*) County Defendants merely

13

1   reiterate these points regarding the SAC.

2          While Plaintiffs fail to clearly point to their amendments, the Court nonetheless finds they

3   have sufficiently addressed the deficiencies in the complaint.  The SAC now alleges that "under

4   the Yuba County Jail Manual Policy #A-100, [Palmer] was responsible for fully informing and

5   training [Ramos] about all requirements and obligations of the Jail's policies, which incorporated

6   by reference the terms of the Amended Consent Decree."  (ECF No. 44 at 21.)  Plaintiffs include

7   an excerpt from the Amended Consent Decree, which sets out how custody staff must conduct

8   health and safety checks, including visual observation, verbal interaction if necessary to

9   determine the inmate's well-being, and irregular and unpredictable checks.  (*Id.* at 19.)  Plaintiffs

10  allege various facts regarding how Ramos did not follow these requirements when conducting

11  checks on Yang.  (*Id.* at 19–21.)  Plaintiffs also allege that the County did not sufficiently staff the

12  Jail in accordance with the Amended Consent Decree, because there were not enough officers in

13  housing unit Level 3 to ensure direct visual safety checks could be accomplished.  (*Id.* at 22.)

14  Thus, the Court finds Plaintiffs have alleged a specific training policy, and a factual basis for why

15  Yang's death may have been a "highly predictable consequence" of the failure to equip officers to

16  handle safety checks.

17         Accordingly, the Court DENIES County Defendants' motion to dismiss Plaintiffs' *Monell*

18  claim under the "failure to train" theory of liability.  Plaintiffs' *Monell* claim may only proceed on

19  the "failure to train" theory of liability.

20                          D.      Supervisory Liability

21         In Claim Four, Plaintiffs allege Palmer, as a supervisor, "permitted and failed to prevent

22  the unconstitutional acts of other Defendants and individuals under their supervision and control,

23  and failed to properly supervise such individuals, with deliberate indifference to the rights and

24  serious medical needs of" Yang.  (ECF No. 44 at 41.)

25         A supervisor may be held liable under § 1983 where "there exists either (1) his or her

26  personal involvement in the constitutional deprivation, or (2) a sufficient causal connection

27  between the supervisor's wrongful conduct and the constitutional violation."  *Rodriguez v.*

28  *County of Los Angeles*, 891 F.3d 776, 798 (9th Cir. 2018).  "The requisite causal connection can

14

be established . . . by setting in motion a series of acts by others or by knowingly refusing to terminate a series of acts by others, which the supervisor knew or reasonably should have known would cause others to inflict a constitutional injury." *Id.* "Thus, a supervisor may 'be liable in his individual capacity for his own culpable action or inaction in the training, supervision, or control of his subordinates; for his acquiescence in the constitutional deprivation; or for conduct that showed a reckless or callous indifference to the rights of others." *Id.*

County Defendants argue Plaintiffs do not allege facts to support these claims, as there are no allegations Palmer made the decision to remove Yang from suicide watch or to keep Yang on suicide protocol, nor are there allegations regarding how much information Palmer knew about Yang's mental health condition or how the monitoring was insufficient or caused Yang's death. (ECF No. 53-1 at 22.) County Defendants also argue Plaintiffs do not allege facts to show Palmer was aware of the purported constitutional violations. (*Id.*) In opposition, Plaintiffs contend Palmer was responsible for staffing but he set in motion a short-staffing situation in which Ramos could not provide adequate safety checks at the Jail, including the safety checks for Yang. (ECF No. 54 at 24.)

As stated in the Court's prior June 13, 2024 Order, to state a claim for supervisory liability against Palmer, Plaintiffs must allege (1) Ramos exhibited deliberate indifference to Yang's medical needs and (2) a sufficient casual connection between Palmer's conduct and Ramos's deliberate indifference. (ECF No. 42 at 15–16.) With respect to the first element, as stated above, the Court finds the SAC adequately alleges Ramos was deliberately indifferent to Yang's medical needs. With respect to the second element, however, Plaintiffs still fail to allege sufficient facts that show a causal connection between Palmer's conduct and Ramos's alleged infringement of Yang's Fourteenth Amendment rights. (*See* ECF No. 44 at 41–42.) As noted in the prior Order and by County Defendants, Plaintiffs still do not allege Palmer was personally involved in overseeing Ramos's safety checks, knew they were allegedly indifferent, or refused to intervene after becoming aware of Ramos's allegedly deficient safety checks. (ECF No. 42 at 16; ECF No. 53-1 at 22.)

///

15

1   The Court previously granted Plaintiffs leave to amend this claim and identified identical

2   deficiencies in the FAC, which Plaintiffs did not fix in their SAC.  Accordingly, the Court

3   GRANTS County Defendants' motion to dismiss Plaintiffs' supervisory liability claim with

4   respect to Palmer with prejudice.  *See Ecological Rights Found.*, 713 F.3d at 520 ("the court's

5   discretion to deny [leave to amend] is 'particularly broad' where the plaintiff has previously

6   amended its complaint.").

7   E.   Bane Act

8   In Claim Five, Plaintiffs allege all Defendants violated Yang's rights under California

9   Civil Code § 52.1 (the "Bane Act") by violating clearly established rights under the U.S. and

10  California Constitutions.  (ECF No. 44 at 42.)

11  The Bane Act creates a cause of action against any person who "interferes by threats,

12  intimidation, or coercion, or attempts to interfere by threats, intimidation, or coercion," with the

13  constitutional rights of an individual.  Cal. Civ. Code § 52.1.  The Bane Act "does not require the

14  'threat, intimidation, or coercion' element of the claim to be transactionally independent from the

15  constitutional violation alleged."  *Reese v. County of Sacramento*, 888 F.3d 1030, 1043 (9th Cir.

16  2018).  For example, "the coercion inherent in a Fourth Amendment violation could support a

17  Bane Act claim."  *Sandoval v. County of Sonoma*, 912 F.3d 509, 520 (9th Cir. 2018).  However,

18  the Bane Act still requires "a showing of the defendant's specific intent to violate the plaintiff's

19  constitutional rights."  *Rodriguez*, 891 F.3d at 802.

20  County Defendants argue Plaintiffs do not specifically identify what Ramos or Palmer did

21  separately from other named Defendants to violate the Bane Act and the SAC is devoid of

22  specific actions by specific Defendants which constitute threats, intimidation, or coercion.  (ECF

23  No. 53-1 at 23.)  County Defendants also argue, to the extent Plaintiffs are attempting to allege a

24  Bane Act claim under Title 15, the claim also fails because Plaintiffs do not allege facts to

25  suggest Ramos or Palmer acted with specific intent to violate Yang's constitutional rights or that

26  either of them knew or had reason to know Yang was still at heightened suicide risk after he was

27  transferred back to general population.  (*Id.* at 24.)  In opposition, Plaintiffs contend they have

28  adequately pleaded Fourteenth Amendment claims against Ramos and Palmer, who both knew

16

1    Yang was at high risk of suicide but failed to create a safety plan for him and failed to perform

2    safety checks that complied with Title 15, the consent decree, and the County's own policy.

3    (ECF No. 54 at 25.)  Plaintiffs further maintain their well-pleaded deliberate indifference claims

4    against Palmer and Ramos satisfy the Bane Act's "specific intent" requirements.  (*Id.* at 26.)

5            As similarly stated in the Court's prior June 13, 2024 Order, even if Plaintiffs' allegations

6    regarding Title 15, the consent decree, or the County's own policy were enough to satisfy the

7    Bane Act's predicated constitutional violation requirement—and indeed Plaintiffs have

8    adequately pleaded a Fourteenth Amendment deliberate indifference to a serious medical need

9    claim against Ramos—Plaintiffs do not allege any facts that suggest Ramos or Palmer acted with

10   the specific intent to violate Yang or Plaintiffs' constitutional rights.  *Rodriguez*, 891 F.3d at 802.

11   As stated throughout this Order, Plaintiffs do not allege Ramos or Palmer knew or had reason to

12   know Yang was still at heightened suicide risk after he was transferred back into general

13   population.  Without these factual allegations, it would be illogical for the Court to conclude

14   Ramos and Palmer completed allegedly deficient Title 15 safety checks with "the particular

15   purpose of depriving [Yang and Plaintiffs] of [their] enjoyment of the interests protect[ed] by

16   [their constitutional] right[s]."  *Cornell v. City & County of San Francisco*, 17 Cal. App. 5th 766,

17   803 (2017).

18           The Court previously granted Plaintiffs leave to amend this claim and identified identical

19   deficiencies in the FAC, which Plaintiffs did not fix in their SAC.  Accordingly, the Court

20   GRANTS County Defendants' motion to dismiss Plaintiffs' Bane Act claim with prejudice.  *See*

21   *Ecological Rights Found.*, 713 F.3d at 520 ("the court's discretion to deny [leave to amend] is

22   'particularly broad' where the plaintiff has previously amended its complaint.").

23                   F.    <u>Negligence</u>

24           In Claim Six, Plaintiffs allege Ramos and Palmer were negligent in failing to provide

25   reasonable and due care owed to Yang by failing to: provide safe and appropriate jail custody for

26   Yang, including reasonable classification and direct visual hourly safety checks; provide prompt

27   and timely access to appropriate treatment and safety from the grave danger he posted to himself;

28   provide safe and appropriate jail custody for Yang; summon necessary and appropriate medical

                                            17

1   care; implement and/or enforce and/or properly execute drastically needed suicide prevention

2   policies; refrain from abusing authority granted to them by law; and refrain from violating

3   Plaintiffs' constitutional rights.  (ECF No. 44 at 44.)

4        County Defendants argue they are immune from liability under California Government

5   Code § 845.6.[6]  (ECF No. 53-1 at 25–26.)  California Government Code § 845.6 provides:

> Neither a public entity nor a public employee is liable for injury
> proximately caused by the failure of the employee to furnish or
> obtain medical care for a prisoner in his custody; but . . . a public
> employee, and the public entity where the employee is acting within
> the scope of his employment, is liable if the employee knows or has
> reason to know that the prisoner is in need of immediate medical care
> and he fails to take reasonable action to summon such medical care.

10  Cal. Gov't Code § 845.6.  "[U]nder Government Code [§] 845.6, both a public entity and its

11  employees are immune from claims based on injuries to prisoners caused by a failure to provide

12  medical care, except when an employee, acting within the scope of his employment, fails to

13  provide medical care to a prisoner and has reason to know that need for medical care is

14  immediate."  *Lawson v. Superior Ct.*, 180 Cal. App. 4th 1372, 1384 (2010); *see also Arias v.*

15  *County of Los Angeles*, No. CV2106865MWFKES, 2022 WL 1557057, at *3 (C.D. Cal. Mar. 29,

16  2022) (Thus, "[a] fair reading of [§] 845.6 reveals that a public employee is liable if he fails to

17  summon medical care in situations where the need for medical care is known . . . [b]ut in

18  situations where the need for medical care is unknown, the public employee is immune from

19  liability.").

20       In opposition, Plaintiffs contend § 845.6 is inapplicable to "nearly all of Plaintiffs'

21  negligence theories" because the allegations against Ramos and Palmer concern their failures to

22  protect Yang by failing to monitor him — not from failing to summon medical care for him.

23  (ECF No. 54 at 28.)

24       Like the Court did in its prior June 13, 2024 Order, it disagrees with Plaintiffs.  As

25  alleged, Plaintiffs' negligence claims stem from Ramos and Palmer's alleged failure to properly

26  ─────────────────────

[6]    County Defendants also argue Plaintiffs fail to articulate the basis of negligence for
27  Palmer and Ramos and contend the claim is insufficiently pleaded.  (ECF No. 53-1 at 24–25.)
    However, because the Court finds County Defendants are immune from Plaintiffs' negligence
28  claim, the Court declines to address these arguments.

18

1   monitor Yang given his heightened suicide risk.  (ECF No. 44 at 43–45.)  In applying § 845.6 to

2   cases involving a detainee or inmate's suicide, district courts across the Ninth Circuit have

3   consistently found that suicide is a mental health problem for which incarcerated individuals have

4   the right to receive medical care, which can include withholding items that can be used for self-

5   harm and providing additional surveillance.  *Arias*, 2022 WL 1557057, at *3 (citing cases)

6   ("[S]ection 845.6 is applicable to cases of suicide.").  Thus, "where a suicide occurs and the need

7   for medical care was unknown, public entities and employees are immune from suit under [§]

8   845.6."  *Id.*; *see also Arceo v. City of Roseville*, No. 2:20-cv-02334-DAD-DB, 2024 WL 871463

9   (E.D. Cal. Feb. 28, 2024).  As Plaintiffs have not alleged Ramos or Palmer knew or should have

10   known Yang needed medical care because he was at imminent risk of committing suicide, the

11   Court finds County Defendants are immune from Plaintiffs' negligence claims.

12          The Court previously granted Plaintiffs leave to amend this claim and identified identical

13   deficiencies in the FAC, which Plaintiffs did not fix in their SAC.  Accordingly, the Court

14   GRANTS County Defendants' motion to dismiss Plaintiffs' negligence claim with prejudice.  *See*

15   *Ecological Rights Found.*, 713 F.3d at 520 ("the court's discretion to deny [leave to amend] is

16   'particularly broad' where the plaintiff has previously amended its complaint.").

17          **IV.    CONCLUSION**

18          For the foregoing reasons, the Court GRANTS IN PART and DENIES IN PART County

19   Defendants' motion to dismiss (ECF No. 53) as follows:

20          1.   County Defendants' motion to dismiss Plaintiffs' deliberate indifference to serious

21              medical needs claim is DENIED with respect to Ramos and GRANTED with

22              prejudice with respect to Palmer;

23          2.   County Defendants' motion to dismiss Plaintiffs' deprivation of familial relations

24              claim is DENIED with respect to Ramos and GRANTED with prejudice with respect

25              to Palmer;

26          3.   County Defendants' motion to dismiss Plaintiffs' *Monell* liability claim is GRANTED

27              with prejudice with respect to the "pervasive practice or custom" theory of liability

28              and DENIED with respect to the "failure to train" theory of liability;

19

4.  County Defendants' motion to dismiss Plaintiffs' supervisory liability claim is GRANTED with prejudice;

5.  County Defendants' motion to dismiss Plaintiffs' Bane Act claim is GRANTED with prejudice; and

6.  County Defendants' motion to dismiss Plaintiffs' negligence claim is GRANTED with prejudice.

County Defendants shall file an answer not later than twenty-one (21) days from the electronic filing date of this Order.

IT IS SO ORDERED.

Date: December 2, 2024

_____
TROY L. NUNLEY
CHIEF UNITED STATES DISTRICT JUDGE